UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In the Matter of BEVERLY B. MANN,           )
Attorney-Respondent                          )
                                             )
In the matter of a Petition for a Rule to Show )
Cause against:                               )
                                             )
GINO AGNELLO, Clerk, United States Court )
of Appeals for the Seventh Circuit, FRANK )
H. EASTERBROOK, Chief Judge, and        )
Circuit Judges MICHAEL S. KANNE,        )
DANIEL A. MANION, KENNETH F.           )
RIPPLE, ILANA D. ROVNER, DIANE P.       )
WOOD, and ANN C. WILLIAMS.             )

FILED: MARCH 20, 2008
08CV1627            AEE
JUDGE ST. EVE
MAGISTRATE JUDGE COLE

Formerly case No. M.R. 22285
(06 CH 38), Supreme Court of Illinois.

## NOTICE OF REMOVAL

To:    Clerk, Illinois Supreme Court          Clerk, Attorney Registration and
       Supreme Court Building                  Disciplinary Commission of the
       200 East Capitol Avenue                 Illinois Supreme Court
       Springfield, Illinois 62701            130 East Randolph Drive, 11th Floor
                                               Chicago, Illinois 60601

       Robert V. Verrando                      Ronald Rascia
       Senior Counsel, Illinois ARDC           Assistant Illinois Attorney General
       130 East Randolph Drive, Suite 1500     100 West Randolph Street, 13th Floor
       Chicago, Illinois 60601                 Chicago, Illinois 60601

       Beverly B. Mann
       P.O. Box 20
       Whitmore Lake, Michigan 48189

The UNITED STATES, on behalf of GINO AGNELLO, Clerk, United States Court of

Appeals for the Seventh Circuit, FRANK H. EASTERBROOK, Chief Judge of the United States

Court of Appeals for the Seventh Circuit, and Circuit Judges MICHAEL S. KANNE, DANIEL A.

MANION, KENNETH F. RIPPLE, ILANA D. ROVNER, DIANE P. WOOD, and ANN C.

WILLIAMS, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern

District of Illinois, submits this notice of removal of the above-captioned rule to show cause proceeding from the Supreme Court of Illinois, to the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. § 1442(a), and in support states the following:

1.    Beverly Mann, a respondent in a disciplinary matter before the Attorney Registration and Disciplinary Commission (ARDC) of the Illinois Supreme Court, caused subpoenas to issue in the above-captioned matter, directing the clerk of the United States Court of Appeals for the Seventh Circuit along with the court's chief judge and six circuit judges to appear to testify in the ARDC proceeding.  Mann was informed by the federal court that under the regulation governing testimony of federal judiciary personnel and production of judiciary records in legal proceedings,[1] her requests would not be complied with.  Petition for a Rule to Show Cause at 5.  On February 28, 2008, Mann filed a petition (copy attached) in the Illinois Supreme Court for a rule to show cause why the federal clerk and the federal judges should not be held in contempt by the state court.

2.    The matter is an action against the United States (because it attempts to compel official-capacity actions by federal officials) and thus is subject to removal to this court pursuant to 28 U.S.C. § 1442(a)(1).  Alternatively, this is an action against officers of the courts of the United States for actions under color of their office or in the performance of their duties and thus subject to removal to this court pursuant to 28 U.S.C. § 1442(a)(3).

---

[1]    Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings, found at www.uscourts.gov/courts/regulations.htm#regulations.

3.      Because of sovereign immunity, state courts may not compel compliance with subpoenas by federal officials.  *Edwards v. Department of Justice*, 43 F.3d 312 (7th Cir. 1994).

4.      A copy of the state-court petition for a rule to show cause is submitted herewith.

WHEREFORE, the petition for a rule to show cause against the various federal judicial officials now pending in the Supreme Court of Illinois is properly removed to this Court pursuant to 28 U.S.C. § 1442(a).

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Thomas P. Walsh
    THOMAS P. WALSH
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5312
    thomas.walsh2@usdoj.gov

08CV1627
JUDGE ST. EVE
MAGISTRATE JUDGE COLE

IN THE
SUPREME COURT OF ILLINOIS

In the Matter of:

BEVERLY B. MANN,                                    Commission No.  06 CH 38

    Attorney-Respondent,

    No. 3123460.

## PETITION FOR RULE TO SHOW CAUSE PURSUANT TO RULE 754(e), ARTICLE VII, OF THE RULES OF THE SUPREME COURT OF ILLINOIS SUPREME COURT OF ILLINOIS ON ADMISSION AND SUPREME COURT OF ILLINOIS DISCIPLINE OF ATTORNEYS

Respondent Beverly B. Mann, *pro se*, petitions this Court, pursuant to Rule 754(e), Article VII,

of the Rules of the Supreme Court of Illinois Supreme Court of Illinois on Admission and

Discipline of Attorneys, for the issuance of a rule to show cause why the following-identified

persons should not be held in contempt for failure or refusal to comply with respective subpoenas,

copies of which accompany here as Group Exhibit 1,[1] that they concede were properly served upon

them.    Those persons are:

- Gino J. Agnello

- Frank H. Easterbrook

- Michael S. Kanne

- Daniel A. Manion

- Kenneth F. Ripple

- Ilana D. Rovner

- Diane P. Wood

- Ann C. Williams

- Anne M. Burke

---

[1] The exhibits to this petition are bound and submitted separately.

The subpoenas were served on all except Burke on January 23, 2008, and on Burke on January 24, 2008. They required the appearance at a hearing in the above-identified matter at the ARDC's Chicago office on January 31, 2008. Most of the subpoenas also required the production of certain documents.

All of the above-identified individuals have acknowledged in writing that they indeed were served with the subpoenas and that the service was timely under Illinois's procedural rules. See the accompanying Exhibit 2, acknowledging this on behalf of Agnello, Easterbrook, Kanne, Ripple, Manion, Rovner, Wood and Williams. See the accompanying Exhibit 3, acknowledging this on behalf of Burke.

Burke is a member of your court. Agnello is the Clerk of the United States Court of Appeals for the Seventh Circuit. Easterbrook, Kanne, Ripple, Manion, Rovner, Wood and Williams are members of the United States Court of Appeals for the Seventh Circuit.

The single complainant in this matter was Judge Easterbrook, with whom Mann has been feuding for nearly a decade, and who twice earlier unsuccessfully sought to have the ARDC initiate a disciplinary proceeding against Mann; the third time was the charm. A copy of ARDC's complaint accompanies as Exhibit 4.

On July 9, 2007, Mann, who now lives in Michigan, filed a lawsuit in the United States District Court for the Eastern District of Michigan against Easterbrook, Agnello, and the others she has subpoenaed in this matter. The complaint in that lawsuit describes the bizarre fued between Easterbrook and Mann and its (profound) repercussions for her. The complaint also alleges that Easterbrook falsified the names of Kanne and Manion on a series of court orders that bear their names along with his own, that he falsified the names of Kanne and Ripple on a series of other court orders that bear their names along with his, and that he falsified the names of Kanne and Williams on another particular order.

2

The complaint also alleges that Easterbrook enlisted the assistance of Rovner and Rovner's close personal friend, Burke, to orchestrate the outcome of an appeal in the Illinois Court of Appeals in a case in which Mann was the plaintiff and appellant—an opinion written by Burke, who at the time was a member of that court, in a case that Easterbrook claimed (weirdly) was really the same case as the one in which he issued the series of orders that bear Kanne's and Manion's name along with his own, and on which Easterbrook claimed to rely extensively for statements of procedural fact that in fact were flatly and verifiably erroneous.

Mann alleges that Easterbrook arranged for one of his assistants, who attended the oral argument in the state court appeal, to assist in reviewing the state appellate court file and that Easterbrook himself wrote the part of the Burke opinion that contained the false statements of procedural fact—the part upon which Easterbrook's unpublished opinion that bears Kanne's and Manion's names along with his own purported to rely as grounds for his *sua sponte* imposition of a steep financial sanction against Mann. It is that financial sanction that plays a seminal role in the ARDC complaint against Mann; Mann is alleged to have engaged in misconduct by refusing to pay it. Mann contends, among other things, that the order itself was a fraud and, because it was issued by one rather than three judges, was void *ad ab initio* under the Federal Rules of Appellate Procedure.

The complaint in the federal lawsuit details the (strong) factual basis for these allegations. A copy of that complaint accompanies as Exhibit 5, and Mann incorporates and relies upon its contents. The allegations contained in that complaint also are playing a role in the Judicial Council of the United States' Committee on Judicial Conduct and Disability's current revamping of the procedure and criteria concerning misconduct complaints against federal judges. See the accompanying exhibits 6 and 7.

One of the allegations in the ARDC's complaint against Mann is that in documents she filed with the Court of Appeals for the Seventh Circuit in an unrelated case, Mann made allegedly false statements about Rovner's integrity—Mann claimed improper conflict of interest and, in another case, bias—and that the statements constitute fraud, deceit and dishonesty. The ARDC Administrator's attorney, Robert J. Verrando, admitted at the January 31 hearing that he does not know whether the statements—one of which was obviously made not a representation of fact but as sarcasm; another which is verifiably true; the others which probably are true—are false, but stated that the statements constitute fraud, deceit and dishonesty because Mann made them with reckless disregard for their truth.

He did not acknowledging the existence of such First Amendment precedent as *New York Times v. Sullivan*, 376 U.S. 254, 11 L.Ed.2d 686, 84 S. Ct. 710 (1964), that the truth or falsity of statements is irrelevant to the right to make the statement; he claims that attorneys are entitled to allege bias, conflict of interest, or other judicial misconduct only if the judge has admitted it. He also claims, without identify the persons defraud and deceived, that any statements, including those made in recusal motions and in judicial misconduct complaints, constitute fraud, deceit and dishonesty and therefore attorney misconduct under the Illinois' Rules of Attorney Conduct. The hearing board chair for his part, indicated that he believes that the simply making of such statements, in and of themselves, irrespective of the truth of the statements, constitute a violation of the Illinois' Rules of Attorney Conduct. (Mann plans to challenge as a flagrant violation of the First Amendment the Rules at issue—which were promulgated not by the state legislature but by the judicial branch, apparently in an act of self-interest and self-protection—in a separate federal lawsuit.)

4

The above-referenced Exhibit 2 is a copy of a letter dated January 25 to Mann from Andrew J.

Kohn, chief deputy clerk of the United States Court of Appeals for the Seventh Circuit, sent in

response to the subpoenas. The body of the letter reads in full:

> Dear Ms. Mann:
>
> The named Judges and the Clerk cannot comply with the subpoena you provided in the above case. State courts cannot compel a federal official to testify or provide documents. *See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994). Moreover, regulations applicable to the federal judiciary set out procedures that must be followed before a determination can be made whether and under what circumstances judicial personnel will be permitted to testify [fn.1]. The eight personal checks which you enclosed with the subpoena are being returned to you with this letter.
>
> Very truly yours,<br>s/Andrew J. Kohn

Fn. 1 reads:

> The full regulation governing "Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings" as adopted by the Judicial Conference of the United States in March 2003 can be found at www.uscourts.gov/courts/regulations.htm#regulations.

Upon receipt of that letter, Mann filed a three-page emergency motion, a copy of which

accompanies as Exhibit 8, to compel compliance with the subpoenas. The motion stated in part:

> The letter is remarkable in several respects, not least of them that *Edwards v. Department of Justice* is a Seventh Circuit opinion that concerns access to testimony of federal employees in civil lawsuits filed against the United States; the issue in *Edwards* was the validity of 28 C.F.R. [Code of Federal Regulations] §§ 16.21-16.29, in such civil lawsuits brought by private individuals against the federal government. The opinion does not, and cannot, apply to restrict defendants from access to information and witness testimony in criminal or civil matters brought against them by the federal, or for that matter, the state government. Federal regulations—whether 28 C.F.R. §§ 16.21-16.29 or the regulations applicable to the federal judiciary that set out procedures that, according to Mr. Kohn, must be followed before a determination can be made whether and under what circumstances judicial personnel will be permitted to testify, or any other regulations—cannot supersede Fifth and Fourteenth Amendment rights to due process of law. It is astonishing and disgusting that a federal court of appeals claims they can and do, in order to shield its own judges and court employees from testifying and producing documents that may well be against their interest, in a legal matter brought by a state at the (repeated) insistence solely of those judges, on behalf of no one *other than* those judges.
>
> To the extent, if any, that the cited regulations would normally apply in a state attorney disciplinary matter, they surely do not apply in this one. By filing the charge against Mann and

serving as her sole accuser, these judges and that court have waived any right to invoke them. They, no more than anyone else—say, a former client of the attorney's—can initiate a complaint in which they alone hold the evidence and then deny the attorney access to themselves as witnesses and to their records as documentary evidence once they have succeeded in having the regulatory commission pursue the matter.

On January 28, 2008, Mann filed a Combined <u>Response</u> to Administrator's Motion to Bar Respondent from Presenting Testimony of Judges and Court Clerks, and <u>Motion</u> to Dismiss Complaint, which likens this circumstance to that of the federal government in cases in which it invokes the so-called state-secrets privilege. The United States Supreme Court and lower federal courts have held that claims must be dismissed against someone whose defense to the claim otherwise entitles them to the documentary information or testimony withheld upon the invocation of the privilege; the pursuit of such a claim while withholding the documentary information or testimony violates Fifth or (by analogy) Fourteenth Amendment due process guarantees. Mann incorporates by reference and relies here upon the contents of that Response and Motion.

Mann reiterates here, incorporates and relies upon the contents of those four paragraphs. Mann faxed to Kohn a copy of her motion. The hearing board chair denied without comment Mann's motion as well as the Administrator's referenced Motion to Bar Respondent from Presenting Testimony of Judges and Court Clerks, and <u>Motion</u> to Dismiss Complaint.

Mann then phoned Kohn and inquired whether Agnello and the judges planned to file motions to quash the subpoenas. He responded that they did not, and that they planned to ignore the subpoenas. Which they did. None of the subpoenaed witnesses appeared at the hearing. Only Burke formally responded to service of the subpoena. Two assistant Illinois attorneys general appeared at the hearing and presented a motion (Exhibit 3 here) styled a Motion for Entry of Protective Order, which in effect was a motion to quash the subpoena. Mann contested the motion on the procedural ground that the hearing board chair lacked authority to issue a protective order, and on the substantive ground that the rules protecting judges from having to disclose their grounds for rulings, beyond what the judge said in the ruling itself, is inapplicable in this instance because the testimony Mann wished to elicit concerned tangible facts apart from (ostensible) reasons for the

6

ruling.  Mann noted that until she asked her questions of the witness, the chair had not way to know

whether or not the inquiry was barred by the judicial protections asserted.

The hearing board chair agreed with Mann, on her procedural grounds and her substantive

grounds.  He continued all the subpoenas generally, and instructed Mann to file a motion with this

Court concerning the subpoenas in order to have the issue resolved before the hearing continued.

Shortly afterward, he scheduled the abated hearing for April 25, 2008 at 9:30 a.m., and issued an

order continuing all the subpoenas until that date and time.

Regarding Agnello and the federal judges, Mann emphasizes that the nature of her inquiry will

concern not the respective judges' reason for the orders if they did participate in issuing them, but

instead whether or not Kanne, Manion, Ripple and Williams actually participated at all in the

issuance of the orders or whether, instead, the orders that bear their names were issued without their

knowledge at the time the orders were issued.

In any event, these individuals are not entitled to simply ignore subpoenas duly served upon

them, which all of them but Burke did.  If these people believe they have valid grounds to have the

subpoenas quashed, the proper procedure for them is the same as it is for anyone else: it is to file a

motion to quash the respective subpoena.

On February 15, I faxed to Mr. Kohn's fax number nine copies of a letter, a copy of which

accompanies as Exhibit 9, addressed to Agnello, Easterbrook, Kanne, Manion, Ripple, Williams,

Rovner and Wood, and cc'd to Kohn, the first several paragraphs of which read:

Dear Mr. Agnello and Judges Easterbrook, Kanne, Manion, Ripple, Williams, Rovner and
Wood:

On January 23, I served each of you with a subpoena requiring your appearance at the offices
of the Illinois Attorney Regulation and Disciplinary Commission (ARDC) in Chicago on
January 31 at a hearing in the above-identified matter, in which your court is the sole
complainant.  The subpoenas sought testimony and, with the exception of Judge Rovner, the
production of documents from each of you.  (The ARDC's subpoenas for appearance at

hearings are titled subpoenas *duces tecum*, whether or not the witness also is requested to produce documents.)

Chief Deputy Clerk Andrew J. Kohn then sent me a letter on your behalf dated January 23 acknowledging proper service of the subpoenas but asserting defenses to compliance with them and indicating that the subpoenas would be ignored—which they were. None of you filed a motion to quash and none of you appeared at the hearing.

I believe that the defenses you claim do not apply to this matter. In any event, you are not entitled to simply ignore the subpoenas.

On January 31, the hearing was continued generally, as were the subpoenas. The hearing board chair, John B. Whiton, issued an order requiring counsel to the ARDC Administrator to notify you of this. Mr. Whiton later issued an order setting the continued hearing for April 25, 2008 at 9:30 a.m. and continuing the subpoenas specifically to that date and time.

You are entitled, of course, to move to quash the subpoenas if you believe you have legitimate grounds to have them quashed, but you are no more entitled than is any other subpoenaed witness to simply ignore the subpoenas. Unless you file a motion to quash, and the motion is granted, you each must comply with the respective subpoena served upon you.

On February 22, I phoned the office of the Clerk of the Court of appeals for the Seventh Circuit and spoke first with a senior deputy clerk named Frank and later with Kohn, and inquired whether Agnello and the judges plan to file motions to quash the subpoenas. She was told that they did not and that they planned to simply ignore the subpoenas because, he said, state courts have no authority to compel federal judges to testify. Mann disputes the breadth of such a claim and that any such bar applies in an instance in which it is those judges themselves who not only initiated the complaint to the ARDC but who are the sole complaining witnesses and who, alone, possess the relevant *factual* information. There are, obviously, other instances in which such a bar does not apply—e.g., in a criminal trial alleging attempted bribery or blackmail of a federal judge.

The Seventh Circuit judges themselves created the doctrine upon which they try to rely; they cite to no federal statute and no United States Supreme Court opinion. Nor, in his letter, does Kohn identify the regulations he claims are applicable, probably because they are not. The purpose of the

regulations is to keep federal regulatory agency officials such as those who work for the FDA from appearing as experts in, say, products liability lawsuits.

But here again, any such bar is not self-executing. These people must assert it in motions to quash the subpoenas. They are not entitled, as they did and have indicated that they again plan to do, imply ignore the subpoenas. They are, and therefore should be held to be, in contempt for failure or refusal to comply with the subpoenas on January 31, 2008 and for failure to file motions with this Court to quash them, as Rule 754(d) required.

****

Rule 754(e) provides that:

> Unless the court orders otherwise, the petition shall be referred to the chief judge of the circuit court of Cook County or Sangamon County or any other judge of those circuits designated by the chief judge.

Mann asks that this Court order otherwise. Justice Burke's husband, longtime Chicago Alderman Edward Burke is, or at least was, the longtime head of the Cook County judicial nomination process, and most sitting Cook County judges owe their judgeships, at least in part, to him. The conflict of interest for them would be obvious. Mann asks that this petition be assigned to a judge in another county.

**Wherefore**, respondent Beverly Mann petitions this Court for the issuance of a rule to show cause why the above-identified persons should not be held in contempt for failure or refusal to comply on January 31, 2008 with the respective subpoenas served upon them.

Respectfully submitted,

Beverly B. Mann
Respondent
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895
DATED: February 24, 2008

CERTIFICATE OF SERVICE

I certify that on February 25, 2008, I served notice of the foregoing upon the following, via United States Mail, at the addresses indicated:

Gino J. Agnello
Frank H. Easterbrook
Ann C. Williams
Ilana D. Rovner
Diane P. Wood
United States Court of Appeals
 for the Seventh Circuit
219 South Dearborn Street
Suite 2727
Chicago, Illinois 60604

Kenneth F. Ripple
208 Federal Building
204 South Main Street
South Bend, Indiana 46601

Daniel A. Manion
301 Federal Building
204 South Main Street
South Bend, Indiana 46601

Michael S. Kanne
4th and Ferry Streets
Halleck Federal Building
Lafayette, Indiana 47902

Ronald A. Rascia
Assistant Illinois Attorney General
100 West Randolph Street, 13th floor
Chicago, IL 60601

Robert J. Verrando
Illinois Attorney Registration and
 Disciplinary Commission
130 East Randolph Drive, Ste. 1500
Chicago, Illinois 60601

John B. Whiton
c/o Kenneth Jablonski
Robert J. Verrando
Illinois Attorney Registration and
 Disciplinary Commission
130 East Randolph Drive, Ste. 1200
Chicago, Illinois 60601

_____
Beverly B. Mann

08CV1627
JUDGE ST. EVE
MAGISTRATE JUDGE COLE

IN THE
SUPREME COURT OF ILLINOIS

In the Matter of:

BEVERLY B. MANN,                         Commission No.  06 CH 38

     Attorney-Respondent,

     No. 3123460

EXHIBITS TO

PETITION FOR RULE TO SHOW CAUSE PURSUANT TO RULE 754(e), ARTICLE VII, OF
THE RULES OF THE SUPREME COURT OF ILLINOIS SUPREME COURT OF ILLINOIS ON
ADMISSION AND SUPREME COURT OF ILLINOIS DISCIPLINE OF ATTORNEYS

Beverly B. Mann
Respondent
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895
DATED: February 24, 2008

**GROUP EXHIBIT 1**

STATE OF ILLINOIS,    )
                      )  SS.        THE PEOPLE OF THE STATE OF ILLINOIS
    Supreme Court     )


TO _Clyde J. Allwood_ ................................................................................

............................................................................................................

..................................................................................GREETING:


WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel

of the Hearing Board of the Attorney Disciplinary System on _January 31_, _2008_

at _11 00_ o'clock _A_ M at _130 E Randolph Dr_ _Suite 1100_ in the City of _Chicago_

County of _COOK_ , to testify and give evidence and the truth to speak in a certain inquiry now

pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is

Complainant and _Beverly Allwood_ Respondent.


And that you also diligently and carefully search for, examine and inquire after and bring with you and produce

at the time and place aforesaid ...........................................................................

_Please see the attached_ .................................................

............................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and

paper writings whatsoever, that can or may afford any information or evidence in said cause.  And this you shall no

wise omit under penalty of the law.


WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this...........................................

day of.................................

_Juleann Hornyak_ .................Clerk.

_RESPONDENT'S PHONE: 248-767-4895_

To: Gino J. Agnello

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1. A printout of your court's internal and PACER-based docket page on *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

2. All documents contained in your court's internal file on *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

3. All internal court documentation indicating when and by what process *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595, was assigned to each of the three judges—Easterbrook, Kanne and Manion—whose names appear on the orders dated August 31, 2001 and thereafter in that case;

4. All internal court memoranda or correspondence, including printouts of email messages, among judges Frank H. Easterbrook, Michael S. Kanne and Ann C. Williams, in *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002) 02-0005;

5. All internal court documentation indicating when and by what process *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002), 02-0005, was assigned to judges Michael S. Kanne and Ann C. Williams, including but not limited to documentation (including memoranda and email messages) indicating whether or not judges Kanne and Williams participated in the issuance of the show-cause order that initiated that matter;

STATE OF ILLINOIS, )
                ) SS.
Supreme Court )        THE PEOPLE OF THE STATE OF ILLINOIS

TO *FRANK H EASTERBROOK* ............................................................................

.................................................................................................................................

............................................................................................................GREETING:


WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel of the Hearing Board of the Attorney Disciplinary System on *January 31*......, *2008* at *10:00* o'clock *A.* M at *130 E Randolph Dr*, SUITE 1100, in the City of *Chicago*, County of *Cook*........................, to testify and give evidence and the truth to speak in a certain inquiry now pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is Complainant and *Beverly Mims* Respondent.


And that you also diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid........................................................................................
*PLEASE SEE THE ATTACHED*..................................................................

.................................................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no wise omit under penalty of the law.


                     WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

                     Seal thereof at Springfield, Illinois, this.............................................

                     day of.........................................

                     *Juleann Hornyak* ......................Clerk.

*RESPONDENT'S PHONE: 248-767-0895*

To:  Frank H. Easterbrook

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1.  A printout of your court's internal and PACER-based docket page on *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

2.  All documents contained in your court's internal file on *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

3.  All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Michael S. Kanne, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

4.  All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Daniel A. Manion, concerning *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

5.  All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Michael S. Kanne, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

6.  All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Daniel A. Manion, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

7.  All internal court documentation, including memoranda and email messages, indicating when and by what process *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595, was assigned to you and to Judges Michael S. Kanne and Daniel A. Manion;

8.  All internal court documentation indicating when and by what process *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002), 02-0005, was assigned to judges Michael S. Kanne and Ann C. Williams, including but not limited to documentation (including memoranda and email messages) indicating whether or not Judges Kanne and Williams participated in the issuance of the show-cause order that initiated that matter;

9.  All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Michael S. Kanne in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

10. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Kenneth F. Ripple in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

11. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Michael S. Kanne in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

12. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Kenneth F. Ripple in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

13. All internal court documentation indicating whether Judges Michael S. Kanne and Kenneth f. Ripple participated in the issuance of the show-cause order and later orders issued in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) that were directed to that concerned Beverly Mann;

14. All internal correspondence between you and Judge William J. Bauer concerning *Beverly Mann v City of Chicago, et al*, nos. 98-1936 and 98-2249;

15. All internal correspondence between you and Judge Kenneth F. Ripple concerning *Beverly Mann v City of Chicago, et al*, nos. 98-1936 and 98-2249.

2

Form 39

STATE OF ILLINOIS, )
                   ) SS.      THE PEOPLE OF THE STATE OF ILLINOIS
Supreme Court      )

TO _DANIEL A MADDON_ .................................................................................

..............................................................................................................................

....................................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel
of the Hearing Board of the Attorney Disciplinary System on _JANUARY 31_ , _2008_
at _11:00_ o'clock _A_ M at _SUITE 1100_ _130 E RANDOLPH DR_ , in the City of _CHICAGO_ ,
County of _COOK_ , to testify and give evidence and the truth to speak in a certain inquiry now
pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is
Complainant and _BEVERLY R MILLS_ Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce
at the time and place aforesaid........................................................................................................
_PLEASE SEE THE ATTACHED_ ..........................................
..............................................................................................................................
together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and
paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no
wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this.....................................................

day of.....................

.......... _Juleann Hornyak_ ..........

..........................................................................Clerk.

_RESPONDENT'S PHONE 248-763-4891_

To:  Daniel A. Manion

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1.  A printout of your court's internal and PACER-based docket page on *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

2.  All documents contained in your court's internal file on *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

3.  All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

4.  All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Michael S. Kanne, concerning *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

5.  All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Frank H. Easterbrook, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

6.  All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Michael S. Kanne, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595.

STATE OF ILLINOIS,   )
                ) SS.          THE PEOPLE OF THE STATE OF ILLINOIS
  Supreme Court   )

TO....*MICHAEL S KANNE*...............................................................................................................

................................................................................................................................................................

....................................................................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel of the Hearing Board of the Attorney Disciplinary System on *JANUARY 31*, *2008* at *10:00* o'clock *A.* M. at *130 E RANDOLPH DR SUITE 1100*, in the City of *CHICAGO*, County of *COOK*, to testify and give evidence and the truth to speak in a certain inquiry now pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is Complainant and *BEVERLY B MANN* is Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid.................................................................................................................
*PLEASE SEE THE ATTACHED*...............................................................................................
................................................................................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this....................................................

day of..............................................

.............................*Juleann Hornyak*......................Clerk.

*RESPONDENT'S PHONE: 248-767-4895*

To: Michael S. Kanne

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1. A printout of your court's internal and PACER-based docket page on *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

2. All documents contained in your court's internal file on *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

3. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook, concerning *Beverly Mann v. Dorothy Brown*, Nos. 99-1750 and 99-3595;

4. All internal court memoranda or correspondence, including printouts of email messages, indicating when it was that you first learned of **each of the orders** issued in *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

5. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Daniel A. Manion, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

6. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Frank H. Easterbrook, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

7. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Daniel A. Manion, concerning *Beverly Mann v. Dorothy Brown* Nos. 99-1750 and 99-3595;

8. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook in *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002) 02-0005;

9. All internal court memoranda or correspondence, including printouts of email messages, indicating when it was that you first learned of *In the matter of: BEVERLY B. MANN*, 02-0005;

10. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Ann C. Williams in *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002) 02-0005;

11. All internal court documentation indicating when and by what process *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002), 02-0005, was assigned to you, including but not limited to documentation (including memoranda and email messages) indicating

whether or not you participated in the issuance of the show-cause order that initiated that matter;

12. All documentation, including memoranda and email messages, indicating when it was that you first learned of *In the matter of: BEVERLY B. MANN*, 02-0005;

13. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

14. All internal court memoranda or correspondence, including printouts of email messages, indicating when it was that you first learned of **each of the orders** issued in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

15. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Kenneth F. Ripple in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

16. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Frank H. Easterbrook in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*;

17. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Daniel A. Manion in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann*.

STATE OF ILLINOIS,     )
                       )  SS.                THE PEOPLE OF THE STATE OF ILLINOIS
Supreme Court          )

TO _KENNETH__F__RIPPLE_ ......................................................................................................

......................................................................................................................

...................................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel

of the Hearing Board of the Attorney Disciplinary System on _JANUARY 31_ , _2008_

at _10:00_ o'clock _A_ M. at _SUITE 1100_ _130 E RANDOLPH DR_ in the City of _CHICAGO_ ,

County of _COOK_ , to testify and give evidence and the truth to speak in a certain inquiry now

pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is

Complainant and _REBECCA B ADAMS_ is Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce

at the time and place aforesaid _PLEASE SEE THE ATTACHED_

......................................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and

paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no

wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this.............................................

day of.............................................

......................._Juleann Hornyak_.......................Clerk.

RESPONDENT'S PHONE: 248-761-4895

To: Kenneth F. Ripple

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Michael S. Kanne in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann;*

2. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann;*

3. All internal court memoranda or correspondence, including printouts of email messages, indicating when it was that you first learned of **each of the orders** issued in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann;*

4. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Michael S. Kanne in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann;*

5. All internal court memoranda or correspondence, including printouts of email messages, between you or one of your law clerks and a law clerk for Judge Daniel A. Manion in *Snyder v Nolen*, 380 F.3d 279 (7th Cir. 2004) concerning or mentioning *Beverly Mann;*

6. All internal correspondence between you and Judge Frank H. Easterbrook concerning *Beverly Mann v City of Chicago, et al*, nos. 98-1936 and 98-2249;

7. All internal correspondence between you and Judge William J. Bauer concerning *Beverly Mann v City of Chicago, et al*, nos. 98-1936 and 98-2249.

SUBPOENA DUCES TECUM Case 1:08-cv-01627 Supreme Court of Illinois - Before Hearing Board Document 1-3 Filed 03/20/2008 Page 15 of 38

Form 39

STATE OF ILLINOIS,  )
                ) SS.
Supreme Court   )            THE PEOPLE OF THE STATE OF ILLINOIS

TO...... *Diane C Rudd* ..................................................

....................................................................................................

..................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel of the Hearing Board of the Attorney Disciplinary System on........................................

at............o'clock....M.at......................................in the City of.........................,

County of......*Cook*................, to testify and give evidence and the truth to speak in a certain inquiry now pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is Complainant and....................................................is Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid..........................................................................

....*PLEASE SEE THE ATTACHED*...................................

........................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this.............................................

day of.............................................

.......................*Juleann Hornyak*.................................................Clerk.

To:  Diane P. Wood

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook In re: Beverly B. Mann, No. 00-2247 (119 F.3d 657).

Supreme Court of Illinois - Before Hearing Board

Form 39

STATE OF ILLINOIS,    )
                      ) SS.        THE PEOPLE OF THE STATE OF ILLINOIS
Supreme Court         )

TO _ANN C. WILLIAMS_ ........................................................................................................................

.....................................................................................................................................................................

.....................................................................................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel

of the Hearing Board of the Attorney Disciplinary System on _JANUARY 31_ , _2008_

at _11:00_ o'clock _A_ M. at _130 E. RANDOLPH DR_ SUITE 1100 in the City of _CHICAGO_,

County of _COOK_ ......................, to testify and give evidence and the truth to speak in a certain inquiry now

pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is

Complainant and _BEVERLY MANN_ is Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce

at the time and place aforesaid ......................................................................................................................

...... _PLEASE SEE THE ATTACHED_ ...............................................................................

.....................................................................................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and

paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no

wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this ...........................................

day of ...........

_Juleann Hornyak_ ........................................................Clerk.

RESPONDENT'S PHONE 248-762-U895

To: Ann C. Williams

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Frank H. Easterbrook in *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002) 02-0005;

2. All internal court memoranda or correspondence, including printouts of email messages, between you and Judge Michael S. Kanne in *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002) 02-0005;

3. All internal court documentation indicating when and by what process *In the matter of: BEVERLY B. MANN*, 311 F.3d 788 (7th Cir. 2002), 02-0005, was assigned to you, including but not limited to documentation (including memoranda and email messages) indicating whether or not you participated in the issuance of the show-cause order that initiated that matter;

4. All internal court memoranda or correspondence, including printouts of email messages, indicating when it was that you first learned of *In the matter of: BEVERLY B. MANN*, 02-0005;

Form 39

STATE OF ILLINOIS,  )
                   ) SS.
Supreme Court     )

THE PEOPLE OF THE STATE OF ILLINOIS

TO _ILANA D ROVNER_ ............................................................................

................................................................................................................................

.................................................................................................GREETING:

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel of the Hearing Board of the Attorney Disciplinary System on _Thursday 31_, _2005_ at _11:00_ o'clock _A_ M. at _130 E. Randolph St, Suite 1100_ in the City of _Chicago_, County of _Cook_........................, to testify and give evidence and the truth to speak in a certain inquiry now pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is Complainant and _Betty Mann_ is Respondent.

And that you also diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid.............................................................................................................

................................................................................................................................

................................................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no wise omit under penalty of the law.

WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

Seal thereof at Springfield, Illinois, this............................................

day of.................................. ....................

.................. _Juleann Hornyak_ ....................Clerk.

_RESPONDENT'S PHONE. 248-367-4895_

STATE OF ILLINOIS, )
               ) SS.
  **Supreme Court** )

THE PEOPLE OF THE STATE OF ILLINOIS

TO _ANNE M. BURKE_ ........................................................................

.............................................................................................................

............................................................................................GREETING:

    WE COMMAND YOU, that all business and excuses being laid aside, you and each of you attend before a Panel of the Hearing Board of the Attorney Disciplinary System on _JANUARY 31_, _2008_ at _2:00_ o'clock _P._ M. at _130 E RANDOLPH DR_ _SUITE 1100_ in the City of _CHICAGO_, County of _COOK_........................., to testify and give evidence and the truth to speak in a certain inquiry now pending and undetermined before said committee, wherein the Administrator of the Attorney Disciplinary System is Complainant and _RETTBERG KINNAS_ is Respondent.

    And that you also diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid......................................................................................
_PLEASE SEE THE ATTACHED_
.............................................................................................................

together with all copies, drafts and vouchers relating to the said documents, and all other documents, letters and paper writings whatsoever, that can or may afford any information or evidence in said cause. And this you shall no wise omit under penalty of the law.

                      WITNESS, JULEANN HORNYAK, Clerk of our said Court, and the

                      Seal thereof at Springfield, Illinois, this..........................................

                      day of...............................

                      _Juleann Hornyak_ ...............Clerk.

_RESPONDENT'S PHONE: 245-763-4885_

To: Anne M. Burke

Please diligently and carefully search for, examine and inquire after and bring with you and produce at the time and place aforesaid, the following:

1. All internal Court of Appeals memoranda or other written correspondence, including email messages, among Justice Shelvin Hall, Justice Warren Wolfson, you and any other members of the Illinois Court of Appeals, First Judicial District, in *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 379, 753 N.E.2d 452, 257 Ill. Dec. 257 (2001);

2. All internal Court of Appeals memoranda or other documents of the Illinois Court of Appeals, First Judicial District, in *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 379, 753 N.E.2d 452, 257 Ill. Dec. 257 (2001).

**EXHIBIT 2**

### UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

**ANDREW J. KOHN**
**Chief Deputy Clerk**

Telephone 312-435-5674
Facsimile 312-408 5062

January 25, 2008

Ms. Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189

Re:  Subpoena to Chief Judge Easterbrook,; Circuit Judges Ripple, Kanne,
     Manion, Rovner, Wood, Williams and Clerk Gino Agnello in 06 CH 38
     before the Hearing Board of the Attorney Disciplinary System of the
     Supreme Court of Illinois

Dear Ms Mann:

The named Judges and the Clerk cannot comply with the subpoena you
provided in the above case. State courts cannot compel a federal official to testify or
provide documents. *See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th
Cir. 1994). Moreover, regulations applicable to the federal judiciary set out
procedures that must be followed before a determination can be made whether and
under what circumstances judicial personnel will be permitted to testify.[1] The eight
personal checks which you enclosed with the subpoenas are being returned to you
with this letter.

Very truly yours,

---

[1]  The full regulation governing "Testimony of Judiciary Personnel and Production of
Judiciary Records in Legal Proceedings" as adopted by the Judicial Conference of the United States
in March 2003 can be found at www.uscourts.gov/courts/regulations.htm#regulations.

**EXHIBIT 3**

BEFORE THE HEARING BOARD OF THE ILLINOIS
ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) |
| BEVERLY B. MANN | )   06 CH 38 |
| **Attorney-Respondent** | ) |

### NOTICE OF MOTION

TO:   Beverly Mann
     BeverlyMann2@yahoo.com
     **Via Electronic Mail**

                          Robert J. Verrando
                          Senior Counsel
                          Attorney Registration and Disciplinary Commission
                          130 E. Randolph St., Suite 1100
                          Chicago, IL 60601
                          Email: rvaerrando@iardc.org
                          Fax: 312-565-2320

     **PLEASE TAKE NOTICE** that on Thursday, January 31, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Hearing Board of the Attorney Disciplinary System at 130 E. Randolph Dr., Suite 1100, Chicago, Illinois 60601 and present the attached **MOTION FOR ENTRY OF A PROTECTIVE ORDER**, a copy of which is hereby served upon you.

                          Respectfully submitted,
                          Honorable Anne M. Burke
                          Justice of the Supreme Court

LISA MADIGAN
Attorney General of Illinois     By:            _____
                          RONALD A. RASCIA
                          MARK BINA
                          Assistant Attorneys General
                          Office of the Attorney General
                          100 W. Randolph St., 13th Flr.
                          Chicago, IL 60601
                          (312) 814-3647/814-4417

### CERTIFICATE OF SERVICE

     The undersigned attorney certifies that a copy of the aforementioned document was delivered by e-mail to BeverlyMann2@yahoo.com and to senior counsel Robert J. Verrando via e-mail and fax, on January 29, 2008.

## BEFORE THE HEARING BOARD OF THE ILLINOIS
## ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| BEVERLY B. MANN | ) | 06 CH 38 |
| | ) | |
| Attorney-Respondent | ) | |

## <u>MOTION FOR ENTRY OF A PROTECTIVE ORDER</u>

NOW COMES the HONORABLE ANNE M. BURKE, Justice of the Illinois Supreme Court by and through her attorney LISA MADIGAN, Attorney General of the State of Illinois through her assistants Ronald A. Rascia and Mark Bina and move this Honorable Forum for entry of a Protective Order pursuant to Supreme Court Rule 201(c) and Supreme Court Rule 753(c) (5).

In Support whereof, movant states as follows:

1.      On January 24, 2008, the Honorable Anne M. Burke, Justice of the Supreme Court of Illinois, received an overnight delivery of a subpoena in the above captioned matter along with a witness fee and mileage check from Beverly Mann ("Respondent").

2.      The Honorable Justice Burke hereby moves for a Protective Order.

3.      Pursuant to Supreme Court Rule 201(c) and Supreme Court Rule 753(c)(5), the proceedings before the Board, including discovery practice, shall be in accordance with the Code of Civil Procedure and the Rules of the Supreme Court as modified by Rules promulgated by the Commission Pursuant to Supreme Court Rule 751(a).

1

4.    Supreme Court Rule 201(c)(1) provides that the Hearing Board may, at any time on its own initiative, or upon a motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage or oppression.

5.    Supreme Court Rule 201(c)(2) provides that upon the "motion of any party or witness, on notice to all parties, or on it's own initiative without notice, the Board may supervise all or any part of this discovery procedure."

6.    The undersigned Assistant Attorney General engaged in a conversation with Respondent to inquire as to the nature of the subpoena.  Respondent indicated that she subpoenaed Justice Burke to ask her questions at the hearing regarding an opinion rendered in *Mann v. Upjohn Co.*, 324 Ill.App. 3d 367, 379, 753 NE 2d 452, 257 Ill.Dec. 257 (1st Dist. 2001).

7.    The rider to said Subpoena requests internal court memoranda and written correspondence (including e-mail messages) between various members of the Illinois Appellate Court involving the above mentioned case.  Specifically, the subpoena seeks:

> "All internal Court of Appeals memoranda or other written correspondence, including email messages, among Justice Sheldon Hall, Justice Warren Wolfson, you and any other members of the Illinois Court of Appeals, First Judicial District, in Mann v. Upjohn Co....," and

> "All internal Court of Appeals memoranda or other documents of the Illinois Court of Appeals, First Judicial District, in Mann v. Upjohn Co...."

8.    Based on the plain language of the subpoena rider, it is clear that Respondent

2

seeks to inquire into the deliberative process involved in the ultimate decision rendered in the *Mann v. Upjohn* case.

9.     Such a line of inquiry is prohibited by the absolute judicial privilege. *Thomas v. Page*, 361 Ill.App.3d 484, 490-91 (2d Dist. 2005).  Moreover, it is well-settled that a Judge may not be asked to testify as to his or her mental impressions or processes in reaching a judicial decision.  *Id.*  Since Respondent's subpoena requests documents or other information relating to a Justice's deliberation relating to *Mann v. Upjohn Co.*, the subpoena is objectionable and a protective order should be entered.

10.     In conversation both on Monday, January 28, and Tuesday, January 29, 2008, counsel for Justice Burke advised Respondent of the recognition of the absolute judicial privilege under the *Thomas* case and requested a withdrawal of the subpoena.  Respondent declined such invitation.

11.     Given the nature of the law under *Thomas v. Page*, there is no good faith basis to require Justice Burke to testify to any matters relative to the decisional process involved in an opinion published by the Appellate Court.

12.     Furthermore, Respondent Beverly Mann served the subpoena approximately one week before the scheduled hearing.  Seven days notice on a subpoena is unreasonable in this circumstance.

13.     Movant asks this Board to enter a protective order barring the use of compulsory process by subpoena with respect to Justice Burke given the only possible line of inquiry which

could be relevant to a proceeding before this body would be protected by the absolute judicial privilege.

14.    Justice Burke reserves the right to file a motion to quash subpoena under Rule 754 if this Board elects not to enter a protective order under Supreme Court Rule 201(c).

15.    Given the nature of the line of inquiry proposed, the subpoena should be seen as harassment and should not be viewed as a proper use of compulsory process provided under the Rules and as such, a protective order ought to be entered.


**WHEREFORE**, the Honorable Justice Anne M. Burke, Justice of the Supreme Court of Illinois, respectfully moves this body for a protective order pursuant to Supreme Court Rule 201(c) denying discovery through subpoena to prevent unreasonable annoyance or embarrassment and for any other relief as this Forum deems equitable and just.


Respectfully submitted,
Honorable Anne M. Burke
Justice of the Supreme Court

LISA MADIGAN
Attorney General of Illinois          By:    _____

RONALD A. RASCIA
MARK BINA
Assistant Attorneys General
Office of the Attorney General
100 W. Randolph St., 13th Flr.
Chicago, IL   60601
(312) 814-3647/814-4417

4

**EXHIBIT 4**

# BEFORE THE HEARING BOARD
## OF THE
## ILLINOIS ATTORNEY REGISTRATION
## AND
## DISCIPLINARY COMMISSION

In the Matter of:

**BEVERLY B. MANN,**                    Commission No. 06 CH 38

Attorney-Respondent,                    FILED - June 22, 2006

No. 3123460.

## COMPLAINT

Mary Robinson, Administrator of the Attorney Registration and Disciplinary Commission, by her attorney, Robert J. Verrando, pursuant to Supreme Court Rule 753(b) complains of Respondent Beverly B. Mann, who was licensed to practice law in Illinois on April 26, 1979, and alleges that Respondent has engaged in the following conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute:

### COUNT I
*(Making false statements about the integrity of judges)*

1. In April 1984, Respondent was discharged from her employment with the City of Chicago Corporation Counsel's office.

2. In December 1984, Respondent filed suit against the City of Chicago ("the City") in the United States District Court for the Northern District of Illinois alleging that the City had wrongfully discharged her. The clerk of the District Court docketed the matter and assigned it case number 84 C 11020. The litigation continued for many years, during which the parties conducted discovery and filed motions.

3. In March 1998, the Hon. Wayne R. Andersen ("Judge Anderson"), a judge of the District Court, entered an order granting summary judgment in favor of the City in case number 84 C 11020.

4. In 1998 and 1999, Respondent filed appeals relating to case number 84 C 11020 with the United States Court of Appeals for the Seventh Circuit.

5. In July 1999, the Court of Appeals affirmed the summary judgment in case number 84 C 11020.

6. On May 12, 2000, Respondent filed an application for writ of mandamus in the United States Court of Appeals for the Seventh Circuit. The Court docketed the matter and assigned

it case number 00-2247.

7. On May 12, 2000, Respondent filed a pleading entitled "Motion for Judicial Recusal" in the Court of Appeals in case number 00-2247. In her motion, Respondent alleged that Court of Appeals Judges Kenneth F. Ripple ("Judge Ripple") and William J. Bauer ("Judge Bauer") were biased against her because of their own interests.

8. On May 12, 2000, in the pleading described above, Respondent alleged the existence of "an employment-opportunities e-mail chain letter than runs from City Hall to the judges' chambers at the Dirksen Federal Building, and then to the computers of the judges' kids."

9. On May 19, 2000, Respondent filed a pleading entitled, "Supplement to Petition for Writ of Mandamus and to Motion for Judicial Recusal" in the Court of Appeals in case number 00-2247. In the pleading, Respondent stated:

> Mann wishes to make this clear: In moving for the recusal of the appellate panel that decided her then-latest appeal, she does not claim merely that the panel wrongly decided that set of appeals. She claims that the panel *deliberately* wrongly decided it, and that it outright lied in stating that it deemed unworthy of its discussion the issues she presented in those appeals. (emphasis in original)

10. On May 23, 2000, Respondent filed a pleading entitled, "Clarification of Portion of Supplement to Petition for Writ of Mandamus and to Motion for Judicial Recusal" in the Court of Appeals in case number 00-2247. In the pleading, Respondent accused the Court of Appeals of engaging in "undisguised and untroubled deceit" in reviewing legislation.

11. On June 28, 2000, Respondent filed a pleading entitled, "Second Supplement to Petition for Writ of Mandamus and Motion for Judicial Recusal" in the Court of Appeals in case number 00-2247. In her motion, Respondent stated that Judges Andersen, Bauer and Ripple and Judge Frank H. Easterbrook ("Judge Easterbrook") had "consciously contravened numerous long-recognized principles of substantive law and denied [Respondent] even the most fundamental procedural due process in order to terminate this litigation," and predicted that the Court would provide her with "no meaningful review" of the judgments from which she had appealed.

12. On August 25, 2000, Respondent filed a pleading entitled, "Motion for Ruling on Motion for Judicial Recusal and on Petition for Writ of Mandamus" in the Court of Appeals in case number 00-2247. In her motion, Respondent stated that Court of Appeals Judge Ilana Rovner ("Judge Rovner") had ruled in a prior case filed by Respondent against the City of Chicago on the basis of bias resulting from Judge Rovner's son's employment by the City.

13. In the August 25, 2000 motion described above, Respondent also stated that "Judge Rovner has cultivated a reputation as a staunch defender of women who sue their employer or former employer because of gender-related discriminatory conduct, but only women who are not suing people or entities with ties to her son or to her self."

14. On October 30, 2000, Respondent filed a pleading entitled, "Amended Motion for Reconsideration of Final Order and Motion Pursuant to Fed.R.Civ.P. 27(c) for Consideration En Banc" in the Court of Appeals in case number 00-2247. In her motion, Respondent again stated that Judge Rovner had exhibited bias in favor of the City of Chicago in her rulings.

15. In the October 30, 2000 motion described above, Respondent described the order she sought the Court of Appeals to reconsider as "a shoot-from-the-hip advisory opinion written by a haughty judge as an ostentatious demonstration of fidelity to her impugned colleagues" and stated that "the only part of [Respondent's] briefs that any appellate judge read were the covers."

16. In the October 30, 2000 motion described above, Respondent described the conduct of the Court of Appeals as "brazenly self-serving [and] outright corrupt" and stated that the judges of the Court of Appeals "view their primary professional obligation as accruing not to the public and to the ideals of justice and law but to one another, thus their borderline-comical Pavlovian threats."

17. Respondent attached to the October 30, 2000 motion described above, a copy of a complaint of judicial misconduct she had prepared, in which Respondent characterized statements by Judge Rovner in a prior judicial opinion as "a flat-out lie."

18. On January 16, 2001, Respondent prepared and sent to the Assistant Corporation Counsel representing the City of Chicago in case number 84 C 11020 and other persons a letter in which she accused Judge Rovner of deciding Respondent's case on the basis of a conflict of interest and predicted that Judge Rovner would improperly have a certain civil rights appeal assigned to herself so that she could rule on it on the basis of the judge's personal interests.

19. On January 18, 2001, Respondent prepared and sent to the Assistant Corporation Counsel representing the City of Chicago in case number 84 C 11020 and other persons a letter in which she stated that Judge Rovner had "consciously withheld" the release of an opinion in order to avoid being questioned about it.

20. Respondent's statements concerning the judges identified above were false and should have been known by her to be false. Respondent had no reasonable basis for believing her statements to be true, and they were based solely upon Respondent's dissatisfaction with the judges' rulings.

21. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

    a.  bringing a proceeding or asserting an issue where there is no basis for doing so that is not frivolous in violation of Rule 3.1 of the Illinois Rules of Professional Conduct;

    b.  making a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false in violation of

Rule 3.3(a)(1);

 c. making a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge in violation of Rule 8.2(a);

 d. conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4);

 e. conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5); and

 f. conduct which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

## COUNT II
*(Failing to comply with a sanctions order)*

1. In December 1998, Respondent filed a complaint against the Clerk of the Circuit Court of Cook Count in the United States District Court for the Northern District of Illinois, in which Respondent's challenged the appellate record reproduction fees charged by the Clerk of the Circuit Court. The Clerk of the District Court assigned the matter docket number 98 C 8004.

2. In August 1999, the Hon. Harry D. Leinenweber, a judge of the District Court, entered an order granting a defense motion to dismiss case number 98 C 8004.

3. In October 1999, Respondent filed an appeal of the dismissal in the United States Court of Appeals for the Seventh Circuit. The Court of Appeals docketed the appeal as case number 99-3595.

4. On August 31, 2001, the Court of Appeals remanded case number 99-3595 to the District Court with instructions to abstain from interference with the actions of the state court in Respondent's case, and issued a rule to show cause against Respondent for filing frivolous pleadings.

5. On September 19, 2001, the Court of Appeals entered an order finding that Respondent had unreasonably and vexatiously multiplied the litigation in the District Court and the Court of Appeals and ordering her to pay $5,180 to the Office of the State's Attorney of Cook County within 14 days as reimbursement for the county's costs and fees in case number 98 C 8004 and another matter. Respondent received notice of the order shortly after it was entered.

6. As of June 18, 2002, Respondent had not complied with the September 19, 2001 order described above, and the Court of Appeals issued an order directing Respondent to show cause "why she should remain a member of this court's bar with unpaid sanctions entered against her." Respondent received notice of the order to show cause shortly after it was

entered.

7. On June 28, 2002, Respondent filed a response to the rule to show cause described in paragraph 6, above.

8. On November 1, 2002, the Court of Appeals entered an order disbarring Respondent from that Court for failure to comply with the Court's September 19, 2001 sanctions order.

9. At no time did Respondent pay the sanctions.

10. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

> a. conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5)of the Illinois Rules of professional Conduct; and
>
> b. conduct which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

## COUNT III
*(Practicing law after disbarment by federal court)*

1-9. The Administrator realleges paragraphs one through nine of Count II, above.

10. After November 1, 2002, Respondent was no longer authorized to practice law in the United States Court of Appeals for the Seventh Circuit or to hold herself out as an attorney authorized to practice before that Court.

11. In 1998, James R. Snyder ("Snyder"), an inmate of the Illinois Department of Corrections, filed a lawsuit in the United States District Court for the Southern District of Illinois against corrections officials, alleging that the Department of Corrections had denied him access to the courts. The clerk of the District Court docketed the matter and assigned it case number 98 C 671.

12. On March 7, 2001, the Hon. William L. Beatty, a judge of the District Court, entered an order dismissing case number 98 C 671.

13. In April 2001, Snyder filed an appeal of Judge Beatty's dismissal of case number 98 C 671 in the United States Court of Appeals for the Seventh Circuit. The Clerk of the Court docketed Snyder's appeal and assigned it appeal number 01-1688.

14. Between 2001 and 2004, Snyder was represented in appeal number 01-1688 by attorneys from the New York office of the law firm of Jones, Day, Reavis and Pogue ("Jones, Day").

15. In August 2004, the Court of Appeals affirmed the judgment in case number 98 C 671.

On September 8, 2004, the Court of Appeals issued its mandate in appeal number 01-1688.

16. On August 16, 2004, Respondent telephoned Jones, Day's New York office, spoke with attorney Todd Geremia ("Geremia"), identified herself as an attorney and encouraged Geremia to file a petition for rehearing on Snyder's behalf in appeal number 01-1688.

17. On August 23, 2004, Respondent prepared and sent a nine-page assessment of Snyder's case to Geremia.

18. On August 24, 2004, Respondent again telephoned Geremia and asked him to forward her August 23 legal assessment to Snyder.

19. On September 1, 2004, Respondent sent Geremia a letter in which she set forth her recommended legal strategy in appeal number 01-1688 and offered to draft a petition for rehearing in appeal number 01-1688 and to forward it to Snyder for him to file as a *pro se* litigant.

20. Respondent included with her September 1, 2004 letter a description of her legal qualifications, but her letter did not inform Geremia of her 2002 disbarment by the Court of Appeals for the Seventh Circuit.

21. In September 2004, Geremia informed Respondent that Jones, Day would not agree to represent Snyder to seek rehearing of the opinion in appeal number 01-1688. Respondent then forwarded her legal correspondence directly to Snyder. Snyder received the material shortly after it was sent.

22. In September 2004, Snyder sent Respondent a letter accepting her offer of legal assistance in appeal number 01-1688.

23. On September 23, 2004, Respondent prepared a motion to recall the mandate in appeal number 01-1688, signed Snyder's name to it as "Plaintiff-Appellant *Pro Se*," and filed it with the Court of Appeals.

24. In the motion described in paragraph 23, above, Respondent identified herself as the motion's preparer and notice server.

25. As of September 30, 2004, the court had not yet ruled on Respondent's motion. On that date, Respondent sent Snyder a letter describing her analysis of his legal position and offering additional legal assistance to him in appeal number 01-1688.

26. In her September 30, 2004 letter, Respondent advised Snyder to file a certiorari petition regarding appeal number 01-1688, offered to draft such a petition and asked Snyder to tell Respondent how he wished her to proceed in his case.

27. On October 5, 2004, Respondent prepared a motion requesting a ruling on her September 23, 2004 motion to recall the mandate in appeal number 01-1688, signed Snyder's name to it

as "Plaintiff-Appellant *Pro Se*," and filed it with the Court of Appeals.

28. In the motion described in paragraph 27, above, Respondent identified herself as the motion's preparer and notice server, and stated that she would continue to represent Snyder in appeal number 01-1688 unless she was able to obtain another attorney to represent him on a *pro bono* basis.

29. At no time did Respondent inform Snyder of her 2002 disbarment by the Court of Appeals for the Seventh Circuit.

30. In July 2005, the Court of Appeals entered an order finding Respondent's representation of Snyder in appeal number 01-1688 to be a violation if its 2002 disbarment order and an act of contempt.

31. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

   a. practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction in violation of Rule 5.5(a) of the Illinois Rules of Professional Conduct;

   b. conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4);

   c. conduct which is prejudicial to the administration of justice in violation of Rule 8.4(a)(5); and

   d. conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

WHEREFORE, the Administrator respectfully requests that this matter be assigned to a panel of the Hearing Board, that a hearing be held, and that the panel make findings of fact, conclusions of fact and law, and a recommendation for such discipline as is warranted.

Respectfully submitted,

Mary Robinson,
Administrator
Attorney Registration and
Disciplinary Commission

By:  Robert J. Verrando

Robert J. Verrando
Counsel for the Administrator

130 East Randolph Drive, #1500
Chicago, Illinois 60601
Telephone: 312-565-2600

08CV1627
JUDGE ST. EVE
MAGISTRATE JUDGE COLE

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY MANN,

          Plaintiff,

v.

GINO J. AGNELLO, Clerk, United States Court of
Appeals for the Seventh Circuit;
SEVERAL UNKNOWN DEPUTY CLERKS,
United States Court of Appeals for the Seventh Circuit;
FRANK H. EASTERBROOK, Judge, United States
Court of Appeals for the Seventh Circuit;
ILANA D. ROVNER, Judge, United States
Court of Appeals for the Seventh Circuit;
ANNE M. BURKE, Justice, formerly Illinois Court of
Appeals and currently Illinois Supreme Court;
AN UNKNOWN PRIVATE AGENT OF FRANK H.
EASTERBROOK, ILANA D. ROVNER AND ANNE
M. BURKE;
DIANE P. WOOD, Judge, United States
Court of Appeals for the Seventh Circuit;
G. PATRICK MURPHY, Judge, United States District
Court for the Southern District of Illinois;
MICHAEL S. KANNE, Judge, United States Court of
Appeals for the Seventh Circuit;
DANIEL A. MANION, Judge, United States Court of
Appeals for the Seventh Circuit;
ANN C. WILLIAMS, Judge, United States Court of
Appeals for the Seventh Circuit;
In their individual and official capacities;
and THE UNITED STATES OF AMERICA; and
THE STATE OF ILLINOIS;

          Defendants.

## COMPLAINT AND JURY DEMAND

      Plaintiff Beverly Mann, *pro se*, files the instant complaint seeking declaratory and

injunctive relief and monetary damages as authorized by federal law.  In support of her

Complaint, Plaintiff states the following:

## Parties

1.  Beverly Mann is an attorney licensed in the State of Illinois and in the Northern District of Illinois and formerly in the Court of Appeals for the Seventh Circuit. As is relevant ot this lawsuit, she has been a plaintiff in four loosely related lawsuits, two of them in the Northern District of Illinois and the Court of Appeals for the Seventh Circuit, and one of them in the Circuit Court of Cook County, Illinois and the Illinois Court of Appeals.  She has been a resident of Livingston County, Michigan since December 6, 2004.

2.  Gino J. Agnello is and during the time period relevant to the allegations against him the Clerk of the United States Court of Appeals for the Seventh Circuit based in Chicago, Illinois.

3.  The several unknown deputy clerks of the United States Court of Appeals for the Seventh Circuit were during the during the time period relevant to the allegations against them subordinates of Mr. Agnello's.

4.  Frank H. Easterbrook is during the time period relevant to the allegations against him a judge on the United States Court of Appeals for the Seventh Circuit.

5.  Ilana D. Rovner is and during the time period relevant to the allegations against her a judge on the United States Court of Appeals for the Seventh Circuit.  She is the mother of Maxwell Rovner, a former speechwriter to and policy advisor for City of Chicago Mayor Richard M. Daley.  She also is a longtime close friend of defendant Anne M. Burke.

6. Anne M. Burke was in 2001 a justice on the Illinois Court of Appeals and currently is a justice on the Illinois Supreme Court. She is the wife of longtime City of Chicago alderman Edward Burke. She also is a longtime close friend of defendant Ilana D. Rovner.

7. The unknown private agent of Frank H. Easterbrook, Ilana D. Rovner and Anne M. Burke is a red-haired man of slightly stocky build, approximately 5'7" tall, who in May 2001 was approximately 24 to 27 years old and was either a law student or a lawyer.

8. Diane P. Wood is and during the time period relevant to the allegations against her a judge on the United States Court of Appeals for the Seventh Circuit.

9. G. Patrick Murphy is and was during the time period relevant to the allegations against him a judge on the United States District Court for the Southern District of Illinois.

10. Michael S. Kanne is and was during the time period relevant to the allegations against him a judge on the United States Court of Appeals for the Seventh Circuit.

11. Daniel A. Manion is and was during the time period relevant to the allegations against him a judge on the United States Court of Appeals for the Seventh Circuit.

12. Ann C. Williams is and was during the time period relevant to the allegations against her period a judge on the United States Court of Appeals for the Seventh Circuit.

13. The final two defendants are the United States of America and the State of Illinois.

### Jurisdiction and Venue

14. Jurisdiction is vested in this court pursuant to 28 U.S.C. § 1331 and 1343(a). Plaintiff also seeks equitable relief pursuant to 28 U.S.C. § 2201 and 2202.

15. Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Eastern District of Michigan.

### Plaintiff's Allegations and Claims

16.  In early July 1999, Defendant Easterbrook, motivated initially by anger at a slightly sarcastic letter the plaintiff wrote and delivered to the Seventh Circuit court of appeals' clerk's office that was critical of an aspect of an opinion he authored as a member of the merits panel in an appeal unrelated to litigation that the plaintiff then had pending before that court and in which Easterbrook was a member of the merits panel that had heard oral argument three months earlier, and later motivated also by a personal obsessive dislike of a particular aspect of a certain type of litigation and by the plaintiff's vocal and public criticisms of Easterbrook, some of them published on the Internet, began an unlawful, malicious and unconstitutional personal campaign against the plaintiff to gain control of all litigation she had or would have pending in any federal court within the Seventh Circuit and any litigation she had pending in Illinois state court; to alone determine the outcome of all such litigation; and to alone impose, contrive or orchestrate various monetary and other sanctions against her.  A week or two after the referenced letter was delivered to the court, the merits panel in the plaintiff's then-pending appeal issued an unpublished and non-precedential opinion ruling against the plaintiff, defaming her, baldly misstating and omitting various facts—including key procedural facts in the lengthy litigation— and departing starkly from settled precedent of the Seventh Circuit and the United States Supreme Court.

17.  No sanctions were imposed in that appeal, but later monetary and other various sanctions imposed against the plaintiff solely by Defendant Easterbrook included, but were not limited to, the *sua sponte* imposition solely by Defendant Easterbrook of a $5,180.00 sanction; the loss of a highly legitimate appeal in Illinois state court, orchestrated with the assistance of Defendant Rovner, whom the plaintiff had strongly criticized in certain filings with the Seventh

Circuit court for her failure to recuse herself in the plaintiff's original federal-court lawsuit although required by 28 U.S.C. § 455 to do so because of a conflict of interest posed by her son Maxwell's employment as a speechwriter for and policy aid to Chicago Mayor Richard M. Daley; the loss of legitimate appeals in the Seventh Circuit in two separate lawsuits (the second of them loosely related to the state-court appeal), the loss of legitimate litigation in the United States District Court for the Northern District of Illinois directly related to the plaintiff's initial federal-court litigation, the plaintiff's disbarment by the Court of Appeals for the Seventh Circuit because she failed to pay the $5,180.00; the permanent prohibition of the plaintiff from access to any federal court within the Seventh Circuit until she pays the $5,180.00 sanction; the permanent bar to her filing any judicial misconduct complaint pursuant to 28 U.S.C. § 351, including against Defendant Easterbrook himself for his conduct described in this complaint; the inclusion by Defendant Wood of two threatening and defamatory, and according to the opinion itself irrelevant, paragraphs about the plaintiff in an opinion in an interlocutory appeal, and that effectively instructed the district court to rule against the plaintiff on issues that the opinion admitted were not at issue in the interlocutory appeal and that had not been argued or briefed; the issuance of three show-cause orders issued solely by Defendant Easterbrook; the issuance of an order dated July 8, 2005 issued solely by Defendant Easterbrook stating that the plaintiff had engaged in the unauthorized practice of law before the Court of Appeals for the Tenth Circuit in a particular matter although the assistance she had offered to the appellant in that case was precisely of the type authorized and encouraged by the United States Supreme Court in an opinion issued in 1995; and his repeated attempts, including a current one, to have the Illinois Attorney Registration and Disciplinary Commission, and arm of the Illinois Supreme Court, disbar the plaintiff.

18. On several of the orders and opinions referenced in the proceeding paragraph, including each one identified in that paragraph as having been issued solely by Defendant Easterbrook, and on an unpublished opinion not referenced in that paragraph, Defendant Easterbrook falsified the names of two other members of his court in order to misrepresent that that the orders and opinions were issued not solely by Easterbrook but instead by him and two other members of his court.

19. In all but two instances in which Easterbrook falsified the names of two other judges, the judges whose names he falsified were not even aware of the respective appeal, much less of the entry of those orders or opinions, at the time the orders or unpublished opinions were issued. In the other two instances, both of them concerning a case called *Snyder v. Nolen* in which the plaintiff in this case was not a party, the two judges whose names were falsified were aware of the appeal and participated in its published resolution but were unaware of a show-cause order issued against the plaintiff and a later order claiming that the plaintiff engaged in the unauthorized practice of law in assisting the appellant, an Illinois prisoner, in filing a petition for rehearing *en banc* and ordering her to pay a $500 sanction. The two judges whose names wee falsified regarding the plaintiff's assistance to the appellant in *Snyder* were Defendant Michael S. Kanne and non-defendant Kenneth F. Ripple. The allegations of misconduct by Defendant Kanne do not concern the *Snyder v. Nolen* matter. The plaintiff does not allege misconduct on the part of Judge Kanne regarding the plaintiff's involvement in that matter. She alleges instead that at the time that those respective orders were issued, Judges Kanne and Ripple were unaware that their names were invoked in issuing them.

20. Most of the orders in which Easterbrook falsified the names of other judges were issued in a case initially titled *Mann v. Pucinski, Clerk of the Circuit Court of Cook County,*

6

*Illinois*, and then titled *Mann v. Brown, Clerk of the Circuit Court of Cook County, Illinois*, filed

in 1999, the lawsuit challenged the constitutionality of an Illinois statute that required a

ceilingless $.25-per-page court clerk's fee for the preparation of a court record for appeal—a fee

the payment of which is a prerequisite to access to appellate review and that in the case that gave

the plaintiff standing to challenge, a pharmaceutical products-liability case called *Mann v. The

Upjohn Company*, was $1,640.00.  Easterbrook removed the appeal in *Mann v. Pucinski* from his

court's normal random merits-panel-assignment process, which in that court normally occurs

immediately after the appellees' response brief is filed.  Shortly after completion of the briefing,

he alone issued an order ostensibly in the name of the merits panel assigned to the appeal as

required by F.R.A.P. 34 stating that the panel had reviewed the briefs and would decide the case

without oral argument.  He then held the court file in his chambers for fully 18 months after

completion of all briefing in the appeal.

    21.  At some point early on during that 18-month period, he instructed the defendant

unnamed deputy court clerks to not process any documents submitted to his court by the plaintiff

and to instead have all such documents delivered directly to his chambers.  He selected a single

deputy clerk as what the other deputy clerks referred to as "the contact person" as the only

deputy clerk to handle documents filed by the plaintiff until after Easterbrook had reviewed

them.

    22.  Defendant Agnello was aware that Easterbrook had removed the appeal in *Mann v.

Pucinski* from the random-merits-panel assignment process and was handling the appeal himself

in contravention of the Federal Rules of Appellate Procedure, which require the assignment of

appeals to three-judge merits panels, yet he cooperated with, and instructed or allowed his

subordinate deputy clerks to cooperate with, Easterbrook in doing so.

23. The plaintiff's original federal lawsuit, titled *Mann v. City of Chicago*, a lawsuit that had political overtones and that had the potential to effect the law regarding issues of political patronage in Chicago, was filed in the United States District Court for the Northern District of Illinois in 1984 and was pending there after a series of appeals, remands, and the like for 17 years. Defendant Rovner had sat as a member of the panel that decided the first appeal via unpublished order in January 1996. Easterbrook had replaced her on the panel in the second appeal in that case in 1999 after she recused herself because of a conflict of interest created by her son's employment by and close relationship with Chicago Mayer Daley. In August 2000, the plaintiff learned by happenstance that Judge Rovner's conflict of interest actually existed also during the pendency of the first appeal. The plaintiff then reinstated that lawsuit via motion pursuant to Fed. R. Civ. P. 60(b) based largely upon Judge Rovner's undisclosed conflict of interest. In September or October 2000, the plaintiff also filed a judicial misconduct complaint pursuant to 28 U.S.C. 351 against Rovner. The Seventh Circuit's chief justice at the time was Judge Joel M. Flaum, who recused himself from all matters in which the plaintiff in this lawsuit was a party or complainant. By operation of statute based upon seniority, the acting chief judge was Easterbrook, who dismissed the misconduct complaint.

24. In the spring of 2000, the plaintiff filed an interlocutory appeal on an issue in that case that under Seventh Circuit precedent must be heard interlocutorily and that is deemed waived if not appealed interlocutorily. The reference above at paragraph 17 to "the inclusion by Defendant Wood of two threatening and defamatory, and according to the opinion itself irrelevant, paragraphs about the plaintiff in an opinion in an interlocutory appeal, refers to the published opinion in that interlocutory appeal. The plaintiff promptly filed a petition for reconsideration with the Court of Appeals that did not ask for reconsideration of the result but

that instead asked for the deletion of those two paragraphs and that noted that the threshold

statement of law in those paragraphs, which the opinion conceded was not at issue in the appeal

and had not been raised or briefed, was incorrect. That court's rules require that petitions or

motions for reconsideration of the resolution of an appeal be decided by the panel that issued the

order or opinion of which reconsideration is requested, and all such orders bear the names of the

three judges who decided the appeal. In this instance, however, Easterbrook did not allow the

petition to be distributed to the panel, and instead issued an order bearing the names of no judges

at all and denying the petition. The order stated that it was issued "By the court."

  25. In January 2001 the district judge in that case, of whom the plaintiff had sought

recusal in the interlocutory appeal, suggested at a status conference that he favored the plaintiff's

position on the issue if reinstatement of the case via Fed. R. Civ. P. 60(b). The plaintiff ordered

that statute conference transcribed and placed into the court record. A few days later,

Easterbrook, acting *sua sponte* as acting Seventh Circuit chief judge suddenly issued an order

reassigning the case from that district judge to Defendant Southern District of Illinois Judge G.

Patrick Murphy, whom Easterbrook had appointed to handle the case by designation.

  26. The hearing before Judge Murphy on the plaintiff's Rule 60(b) motion was held in a

small courtroom normally used by a magistrate judge. Present in the courtroom was a United

States marshal whose presence Easterbrook had instructed Murphy to arrange. At the close of

the hearing, Murphy suggested that he believed that the Rule 60(b) motion's grounds based upon

Rovner's conflict of interest were valid, yet then denied the motion, smiled and said, "That's not

all." He noted the presence of the marshal and told the plaintiff that a marshal such as the one

who was present would arrest her if she continued to try to pursue the litigation. He said he

would issue a written memorandum of his ruling. When several days later he did, the

memorandum contradicted his oral statement regarding the validity of the grounds concerning

Rovner's conflict of interest.  The memorandum also contained virulently defamatory statements

about the plaintiff, including analogy to Anthony Martin-Trigona, the subject in *In re Martin-*

*Trigona*, 9 F.3d 226 (2nd Cir. 1993).  The memorandum was largely dictated by Easterbrook.

The plaintiff timely filed an appeal.

     27.  The plaintiff is a liberal Democrat who beginning in the summer of 2000 regularly

placed posts, some of them lengthy, on the online magazine *Slate*'s discussion board, called The

Fray.  She posted regularly to the Supreme Court Dispatches Fray board and to the Jurisprudence

Fray board, and wrote article-length posts critical of Easterbrook and article-length posts critical

of the arch-conservative activist bar group The Federalist Society, in which Easterbrook is a

prominent member and at whose annual convention each year he is a featured speaker.  In the

spring of 2000, she wrote an article that was published in the *Chicago Daily Law Bulletin* that

discussed a recently issued United States Supreme Court employment-law opinion that

effectively reversed conservative legal precedent including precedent of the Seventh Circuit, and

sarcastically suggested intellectual dishonesty among conservative federal judges in

employment-law cases.

     28.  In August 2000, when the interlocutory appeal referenced above at paragraph 24 was

pending and by the court's internal procedural policy was assigned to the panel that in July 1999

had decided the second appeal in that case, the plaintiff filed a motion in the pending appeal

requesting the recusal of that panel.  The motion cited and discussed the then-recently-issued and

high-profile (in legal circles) opinion written by prominent Eighth Circuit Judge Richard S.

Arnold in *Anastasoff v. United States* that held unconstitutional the practice of issuing non-

precedential appellate opinions that would neither bind the issuing court nor other litigants in

future cases. The motion also attached a copy of a lengthy, somewhat humorous article that the plaintiff has submitted for publication to a journal that criticized the Federalist Society and Defendant Easterbrook. Easterbrook then had the appeal assigned to another merits panel but orchestrated the inclusion of the two paragraphs described at paragraph 22 and then, as alleged in that paragraph, withheld from that panel the plaintiff's petition requesting deletion of those two paragraphs and stating that the inclusion of the admitted dictum in them on issues not raised and briefed was improper, and that the dictum, which the opinion acknowledged addressed issues that were not briefed and argued were in fact incorrect statements of settled law. Also as alleged at paragraph 22, Easterbrook alone issued the order denying that motion and attributing the order to "the court".

29. During the second week of April 2001, the plaintiff wrote an article strongly critical of the Federalist Society and of Defendant Easterbrook and submitted it for publication in the *New York Times*. When a few days later she had received no response she submitted it for publication in the *National Law Journal*. Meanwhile, on April 18, 2001, the *New York Times* published a lengthy article by staff writer Neil A. Lewis titled "A Conservative Legal Group Thrives in Bush's Washington," which co-opted most of the plaintiff's submission and that contained a response by Easterbrook to statements contained in plaintiff's submission. Later that day, an editor at the *National Law Journal* responded to the plaintiff's emailed submission and said that the *Journal* would have been interested in publishing a shorter version of the submission but that that day the *New York Times* had published an article that was nearly identical to it in substance. In a further exchange of emails, the plaintiff explained to that editor that the similarities between her submission and the *New York Times* article were no mere coincidence, and the *National Law Journal* editor responded that she would be interested in

publishing a submission on the subject by the plaintiff if it had some slightly different twist to it that would make it not simply redundant of the *New York Times* article. The plaintiff said she would try to do so, but never submitted one.

30. Sometime in the spring of 2001, more than a year after completion of the briefing in *Mann v. Pucinski*, the pending state-court appeal in *Mann v. The Upjohn Company* was reassigned from the original panel assigned to hear the merits to a panel on which Defendant Justice Anne M. Burke sat. The reassignment was orchestrated by Easterbrook, using Defendant Rovner as a conduit to Defendant Burke. Also using Rovner as a conduit, Defendant Easterbrook arranged to have the unknown man who is described above at paragraph 7, ferret through the many volumes of the record on appeal in *Mann v. The Upjohn Company* and search for indications of misconduct on the part of the plaintiff in litigating that case. The unknown man, who at the time was not an employee of the Illinois Court of Appeals or of any other Illinois state court, also attended the oral argument in that case in mid-May 2001 and at the close of that argument waited outside a locked door leading from the lobby to the justices' chambers.

31. The published opinion in the cross-appeals in *Mann v. The Upjohn Company*, was issued in late June 2001 and identifies Defendant Burke as its author. The opinion ruled against the plaintiff upon the stated bases of what the opinion said was misconduct by the plaintiff in litigating the case. None of the alleged misconduct, which was not asserted by The Upjohn Company in the appeal and which would have been irrelevant had it been asserted and had the allegations been accurate, actually were patently fabricated for that opinion. The fabricated allegations consisted of representations that trial-court motions were filed by one side or the other were not filed; that motions filed by the plaintiff were denied although the motions actually were granted; that motions filed by The Upjohn Company were granted although the motions

actually were denied; that other orders were entered and rulings made that were not entered and were not made; that occurrences in that litigation occurred when the plaintiff was *pro se* although those occurrences actually occurred at a time when the plaintiff was represented by counsel in that case; and misrepresented those occurrences in any event . The opinion contained, in other words, a veritable slew of patently false representations about what had occurred in the trial court, representations whose purpose, it became clear on August 31, 2001, was to defame the plaintiff and ostensibly provide a foundation for defamatory statements and the imminent imposition by Easterbrook of large monetary sanctions against the plaintiff in the unpublished opinion in *Mann v. Brown*. The opinion in *Mann v. The Upjohn Company* also failed to acknowledge and address most of the grounds for appeal. The opinion in *Mann v. The Upjohn Company* actually was drafted in part by Easterbrook.

32. The plaintiff timely filed a petition for rehearing in *Mann v. The Upjohn Company*. The petition for rehearing was denied on August 14, 2001. The next day, according to the unpublished opinion in *Mann v. Brown* itself, the appeal in *Mann v. Brown* was "submitted", i.e., decided, ostensibly by Defendants Easterbrook, Kanne and Manion. But in fact the appeal was never actually submitted to or by a three-judge merits panel. It was instead decided entirely by Defendant Easterbrook, without the knowledge, much less the participation, of either Kanne or Manion.

33. *Mann v. Brown* was decided in an unpublished opinion issued on August 31, 2001 that, as noted immediately above, the appeal was decided on August 15, 2001. The unpublished opinion ruled against the plaintiff upon the stated basis of grounds that the opinion itself acknowledged were entirely *sua sponte* by that court and of which the plaintiff was given no

prior notice and opportunity to address.  The stated *sua sponte* legal grounds are utterly unsupported by and are contrary to actual law.

34. The opinion in *Mann v. Brown* also *sua sponte* stated, inexplicably, that *Mann v. The Upjohn Company* and *Mann v. Brown* were the same lawsuit; adopted wholesale the baldly inaccurate and defamatory representations in the opinion in *Mann v. The Upjohn Company*; made patently false representations about procedural matters in *Mann v. The Upjohn Company* when that lawsuit early on was pending in federal district court in the Northern District of Illinois and about the contents of the motion (drafted and submitted not by the plaintiff herself but by her attorney at the time) for voluntary dismissal and leave to re-file the lawsuit in state court, and about the contents of the order granting that motion; decided the appeal upon patently erroneous *sua sponte* legal grounds; issued an order requiring the plaintiff to show cause why she should not be ordered to pay to Cook County the hourly-fee value for the County's in-house attorney's time in litigating *Mann v. Brown* in the district court and on appeal; cited the plaintiff's allegedly improper litigation conduct in *Mann v. The Upjohn Company* as alleged in the Burke opinion in that case—a case in which Cook County was not a party—as a main reason for the sanction; made clear that the show-cause order, which actually was issued as a separate order that day and that also bore the names of Kanne and Manion along with Easterbrook's, allowed the plaintiff only to give reason why she should not be sanctioned for what the court already had ruled was sanctionable conduct, and not that she was entitled to give reason why her conduct was not sanctionable at all and was instead entirely proper (as it was, under United States Supreme Court precedent); and, revealingly, *contemporaneously with the plaintiff's response to the show-cause order*, ordered Cook County to submit a bill for attorneys' fees.

35. Defendants Kanne and Manion were unaware of the issuance of the separate show-cause order, just as they were unaware of the unpublished opinion issued the same day, and played no role in the issuance of it. Easterbrook falsified Kanne's and Manion's names on both orders issued on August 31, 2002.

36. On or about September 19, 2001, Defendant Easterbrook, acting alone, issued an order requiring the plaintiff to pay a sanction in the amount of $5,180.00 to the Clerk of the Cook County Courts. The order bore the names of Kanne and Manion along with Easterbrook's. Neither Kanne nor Manion played any role in the issuance of that order and neither was aware of its issuance. Easterbrook falsified Kanne's and Manion's names on that order.

37. The plaintiff did not pay the $5,180.00 sanction. On October 16, 2001, a few days before the plaintiff was scheduled to file her opening brief in the appeal from the June 2001 order entered by Defendant Murphy on the Rule 60(b) motion in *Mann v. City of Chicago*, Easterbrook alone issued an order in *Mann v. Brown* prohibition the plaintiff from filing "papers" of any kind in any federal court within the Seventh Circuit until she paid the $5,180.00. The order stated that the prohibition would last for at least two years, at which time she could file a motion asking that it be lifted. The order bore the names of Kanne and Manion along with Easterbrook's, but neither Kanne nor Manion played any role in the issuance of that order and neither was aware of its issuance. Easterbrook falsified Kanne's and Manion's names on that order.

38. On October 17, 2001, a senior deputy clerk acting at Easterbrook's behest, mailed back to the plaintiff the unfiled copies of a judicial misconduct complaint against Easterbrook that she had submitted pursuant to 28 U.S.C. § 351 in which she alleged that Easterbrook had improperly removed the appeal in *Mann v. Brown* from random assignment to a merits panel;

had improperly withheld the appeal for 18 months after completion of the briefing; had issued order in March 2000 falsely stating that the merits panel had determined to forego oral argument in the case; had improperly interfered in the outcome of *Mann v. The Upjohn Company*; and had alone issued the series of orders in *Mann v. Brown* that bore his name and the names of Kanne and Manion and that he had falsified the names of those judges on those orders. The returned unfiled judicial misconduct complaint was accompanied by a letter from a deputy clerk notifying her that the October 16, 2001 order prohibiting the plaintiff from filing any "papers" included judicial misconduct complaints submitted pursuant to 28 U.S.C. § 351.

39. In November or December 2001, the plaintiff's appeal of Judge Murphy's order in Mann v. City of Chicago was dismissed for want of prosecution. The plaintiff had submitted her opening brief in that appeal, but the brief and all copies of it were mailed back to her unfiled along with a letter citing the October 16, 2001 order.

40. In 2000, the plaintiff had filed a legal malpractice lawsuit in Illinois state court alleging malpractice and conflict of interest by a partner in a well-known Chicago-based law firm who had represented her during a critical three-year period in *Mann v. City of Chicago* and to whose firm she had paid more than $80,000 in attorneys' fees. When that case, titled *Mann v. Leech*, later was improperly removed to federal court, the plaintiff filed a successful motion for remand to state court. She then filed a motion for costs pursuant to 28 U.S.C. § 1447(c), which under then-recent Seventh Circuit precedent written by Easterbrook in *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000), was to be presumptively granted. The motion, however, was denied, and the plaintiff timely appealed. In an unpublished order issued ostensibly by a three-judge panel that did not include Easterbrook and that stated that the Easterbrook precedential opinion held the opposite of what it held, the denial of the plaintiff's motion was affirmed. The

appeal actually was decided by Easterbrook, acting alone; he falsified the names of three judges on that unpublished order. None of the three judges was even aware of the appeal. Shortly afterward, Easterbrook wrote a published opinion relying upon the actual holding in *Garbie* and reaffirming it.

41. In approximately June 2002, Easterbrook ordered a deputy clerk named Julie Cordes to draft and submit to the Illinois Attorney Registration and Disciplinary Commission (ARDC) a complaint against the plaintiff alleging that she had filed frivolous litigation in federal court and also that she had inappropriately claimed judicial bias. The letter of complaint was three or four sentences long and stated no specifics whatsoever. The complaint was summarily dismissed by the ARDC.

42. In June 2002, Easterbrook alone issued an order requiring the plaintiff to show cause why, in light of her failure to pay the $5,180.00 sanction in *Mann v. Brown*, her name should not be removed from the list of attorneys licensed to practice in that court. The order bore the names of Defendants Kanne and Williams along with Easterbrook's. Easterbrook, Kanne and Williams were the designated motions-panel judges for motions filed during that week; thus Easterbrook issued the order in the names of those two judges as well as his own although no motion had been filed seeking any such order.

43. Kanne and Williams played no role in the issuance of that order and did not learn of it until approximately ten days after the plaintiff submitted her response to the show-cause order to the court. The plaintiff, suspicious that neither Kanne nor Williams was aware of the show-cause order and suspicious also that her response to the show-cause order would not be transmitted to wither of those judges, phoned the judges' respective secretaries and inquired whether their chambers had received copies of the response to the show-cause order. As of eight

days after the response was hand-delivered to the clerks' office, neither judge's chambers had

received a copy of it. The plaintiff then sent several copies of it to Kanne's chambers in

Lafayette, Indiana and asked that he forward a copy to Williams. The next day, she spoke with

Kanne's Lafayette secretary, who said she had placed the documents and cover letter on the

judge's chair. The response, which was lengthy, detailed the circumstances under which the

$5,180.00 sanctions order was entered.

 44. In her response to the show-cause order, the plaintiff requested an in-court hearing

pursuant to the relevant court rule. The hearing occurred in October 2002. Defendant Kanne,

who knew that the series of orders issued in *Mann v. Brown* falsely bore his name and Defendant

Manion's along with Easterbrook's, and during the hearing he assured the plaintiff that her

disbarment by that court would not impact her Illinois law license. On November 1, 2002, in a

published opinion written by Easterbrook and without dissent from Kanne or Williams, the

plaintiff's name was ordered removed from the role of attorneys licensed to practice in that court,

upon that stated basis that she had failed to pay the $5,180.00 sanction. There was, of course,

not mention of any of the circumstances under which the sanctions order was entered.

 45. In early 2003, Ms. Cordes, at Easterbrook's behest, drafted and submitted another

complaint to the ARDC against the plaintiff, this time stating that the plaintiff had been disbarred

by the Seventh Circuit and urging disbarment by the Illinois Supreme Court. The complaint was

dismissed upon a finding that the circumstances of the plaintiff's disbarment were a matter solely

between the plaintiff and that court.

 46. For purposes of this paragraph, the plaintiff reasserts and alleges the statements

contained above at paragraph 19 regarding the case titled *Snyder v. Nolen*. She alleges

specifically that Easterbrook alone issued the referenced show-cause order in mid-October 2004

that bore the names of Kanne and Ripple along with his own; that neither Kanne nor Ripple was aware of the order at the time it was issued, and that Easterbrook falsified the names of those two judges on that order; that those two judges learned of the issuance of that order when, after a motion the plaintiff filed for an extension of time in which to file the response was simply ignored and time was about to run out, she frantically phoned the chambers of both those judges and pleaded for a ruling on the motion. Late that evening, one of Judge Ripple's law clerks phoned the plaintiff and left a voicemail message saying that Judge Ripple had granted the motion.

47. As of July 7, 2001, more than eight months after the plaintiff had submitted her response ton the show-cause order, the show-cause order and response remained pending because neither Kanne nor Easterbrook would agree to the issuance of an order finding that the plaintiff had unlawfully practiced law without a license in *Snyder v. Nolen*.

48. Defendant Easterbrook has a brother, Gregg Easterbrook, who is a Washington, DC, political and sports journalist and who for a period of approximately two years beginning in 2000 wrote a sports column and an occasional political article for *Slate*. The sports column occasionally mentioned Defendant Easterbrook and usually noted that he is a federal appeals court judge and regularly indicated the brothers were close and spoke to each other regularly. At that time and until sometime in 2006, the brother also was a writer and editor at the magazine *The New Republic*. On July 7, 2005, Gregg Easterbrook, who is not an attorney and does not hold a law degree, wrote a web-only article on the *New Republic*'s web site about a legal issue. The article, which the plaintiff read and which she suspected had been prompted by Defendant Easterbrook, significantly misstated a particular important rule of law. That day, the plaintiff posted a lengthy rebuttal to it on *Slate* 's Jurisprudence Fray board and questioned why the New

Republic's editors would allow so obvious a misstatement of law to be posted on its web site under the magazine's auspices. The next day, Defendant Easterbrook, acting alone, issued the order against the plaintiff regarding *Snyder v. Nolen* that is described above at paragraph 19. The order bore the names of Kanne and Ripple along with Easterbrook's, although neither Kanne nor Ripple played any part in or even was aware of its issuance. Easterbrook then ordered Ms. Cordes to submit yet another complaint against the plaintiff with the ARDC, along with a copy of the order, asking that the ARDC disbar her.

49. The defendants thus, independently and via conspiracy as described above, have deprived the plaintiff of her civil rights guaranteed by the First and Fifth amendments to the United States Constitution, and by their actions have injured the plaintiff. The plaintiff is entitled by 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 to declaratory and injunctive relief and monetary damages.

THEREFORE, the plaintiff requests to declaratory and injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962.

Respectfully submitted,


Beverly Mann
Plaintiff *Pro se*
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895

DATED: July 9, 2007

**EXHIBIT 6**

February 16, 2008

Honorable Ralph K. Winter, Jr.
Chair, Committee on Judicial Conduct
  and Disability
Judicial Conference of the United States
United States Court of Appeals for
  the Second Circuit
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Winter:

On October 15, 2007, a few minutes before midnight and therefore a few minutes before the deadline for submitting comments to the Judicial Conference's Committee on Judicial Conduct and Disability, I emailed a comment to the Committee that read in full:

October 15, 2007

Dear Committee members:

Six years ago, when I submitted a judicial misconduct complaint against a high-profile Seventh Circuit judge, that judge ordered that the clerk's office refuse to accept it and that that office send the complaint back to me unfiled.

I suspect that the members of your committee and most other federal judges, as well as lawyers and litigants who are familiar with 28 U.S.C. § 355, presume that that statute mandates that the respective circuit court clerks' offices accept and process complaints submitted pursuant to it. After all, Congress enacted that provision as the sole avenue by which to make a formal complaint of misconduct against a federal judge. Congressional representatives informally require as a prerequisite to congressional investigation of alleged misconduct that the complainant first proceed via 28 U.S.C. § 355 and, as currently written, that statute provides no avenue of appeal to the Judicial Conference from a refusal of a circuit clerk's office, upon order of the judge who is the subject of the complaint or upon order of anyone else, to accept and process a complaint.

The allegations in the judicial misconduct complaint I tried unsuccessfully to file six years ago, and the Seventh Circuit clerk's office's compliance with the subject judge's instruction that the complaint be returned to me unfiled, as well as later actions by that judge similar to the earlier actions at issue, are the subject of a lawsuit I filed recently in the Eastern District of Michigan, where I now live. The case number of that lawsuit is 07-cv-12857. (The complaint will be amended next week to broaden its scope in light of recent related events.) The allegations are somewhat sensational, but the evidence that supports them was sufficient to interest a member of the public integrity division at the Chicago office of the F.B.I. when I spoke with him at length about the matter in early 2003. The investigation died, however,

when shortly afterward several agents, including that one, were reassigned from the public integrity division to that office's anti-terrorism division.

I submit this letter in order to request that an amended 28 U.S.C. § 355 require that the circuit court clerks' offices accept and process all misconduct complaints, and that any refusal to accept and process a complaint be appealable to the Judicial Conference of the United States.

I also suggest that the statute be amended to permit appeal by a complainant directly to the Judicial Conference of the United States, and—most important—that no judge who is from the same circuit as the subject judge participate in resolution of any such appeal. Only then will the system established for submission and decision of judicial misconduct complaints have any integrity.

Sincerely,

Beverly Mann
Whitmore Lake, MI

The high-profile judge is Chief Seventh Circuit Judge Frank H. Easterbrook. I am enclosing a copy of the complaint in the referenced lawsuit, no. 07-cv-12857, filed in my home district, the Eastern District of Michigan. The case is titled *Mann v. Agnello, et al.* The first-named defendant, Gino J. Agnello, is the Clerk of the Court of Court of Appeals for the Seventh Circuit.

I also am enclosing a copy of a complaint against me, filed at Easterbrook's behest, at the Illinois Attorney Regulation and Disciplinary Commission (ARDC). Easterbrook had tried twice earlier, unsuccessfully, to have the ARDC file a complaint against me. On his third try, he succeeded.

The hearing before the ARDC hearing board was scheduled for January 31 and February 1, 2008. I served subpoenas for testimony and production of documents upon Mr. Agnello and Judges Easterbrook, Kanne, Manion, Williams, Ripple, Rovner and Wood. Shortly afterward, I received a letter from Chief Deputy Clerk Andrew J. Kohn acknolwied proper service fo the subpoenas but stating that Mr. Agnello and the judges objected to the issuance of them, and stating that they would not comply with the subpoenas. I am enclosing a copy of that letter. I phoned Mr. Kohn and inquired whether Mr. Agnello and the judges would be filing a motion to quash the subpoenas. He angrily said they would not be—that they would ignore the subpoenas—and hung up the phone.

Mr. Agnello and the judges indeed ignored the subpoenas. It was quickly agreed that the subpoenas would be continued generally, that the attorney prosecuting the matter for the ARDC would be allowed to present his case, and that the hearing then would be adjourned for several weeks while the matter of the ignored subpoenas was litigated before the Illinois Supreme Court as per the Commission's procedural rules. Shortly afterward, the continued hearing was scheduled for April 25, and the subpoenas were continued to that date.

I write this as background to the accompanying letter from me to Mr. Agnello and the judges, dated February 15, 2008, which lists you a one of the people cc'd. That letter quotes and discusses

2

a statement labeled "Summary of Purpose for the Judicial Conduct and Disability Act of 1980" currently (and recently) posted on the Seventh Circuit's web site, presumably at Chief Judge Easterbrook's behest, that conveys a hostility toward the very concept of judicial misconduct complaints and that makes baldly false statements regarding the reason why virtually all misconduct complaints have been dismissed and that misstates judicial misconduct law. My letter discusses both the Breyer Commission report and your Committee's Draft Rules which indicate and correct extensive misconceptions by chief circuit judges and circuit judicial conferences about judicial misconduct law *as it currently exists*.

The letter also notes that the purpose of appointment of the Breyer Commission itself and of your Committee's drafting of the Draft Rules was to fend off congressional enactment of a law that would establish an Office of Inspector General of the Judicial Branch. The posting on the Seventh Circuit's web site of misstatements about judicial misconduct law—especially that complainants must product (presumably direct) "evidence" of the misconduct; the implication, and surely the intended implication, is that circumstantial evidence alone is insufficient—indicates that the judges will continue to enforce a tautology by which they dismiss complaints for lack of direct evidence to support them while maintaining (or trying to maintain) an impenetrable sheath of secrecy that precludes complainants from obtaining direct evidence to support the complaints they based upon circumstantial evidence.

I plan, immediately after your Committee's Draft Rules become effective, presumably in mid-April, to submit a judicial misconduct complaint alleging what I allege in my Eastern District of Michigan complaint. The new Rules will, at least as I understand them, prohibited Mr. Agnello from sending the complaint back to me unfiled as barred by that court's October 16, 2002 order prohibiting me from filing any "documents" in any federal court within that circuit; the Draft Rules require Mr. Agnello to file and process every misconduct complaint submitted. They also, as I understand them, bar dismissal for failure to submit the complaint on the proper form or for failure to dot some other "i" or cross some other "t".

And the Rules will permit, as a matter of right, the review by your Committee of complaints that are dismissed—or complaints that are returned to the complainant unfiled.

I would like to think that the new Rules will actually alter the judicial misconduct process— that they will inaugurate a genuine misconduct investigatory and discipline progress—but I do not. I plan to submit a copy of these documents, along with a printout of the Seventh Circuit's "Summary of Purpose for the Judicial Conduct and Disability Act of 1980," to the House and Senate judiciary committees, in support of the bills that would establish an Office of Inspector General of the Judiciary. I believe those bills are H.R. 5219 and S. 2678. I also will ask that those bodies consider enacting legislation that would force upon the courts some reasonable level of transparency, such as extension of the Freedom of Information Act to certain internal court documents, including release of memoranda between judges ad their law clerks about cases after the case the case beginning, say, one or two years after the case is closed.

It would be, I think, nearly impossible for me to fully convey the extent of the havoc that Easterbrook's unremitting, nearly decade-long vendetta against me has caused in my life. Yet, had he not (finally) succeeded in enlisting the ARDC in his malicious cause, I probably would not

3

have pursued the matter.  Now that he has succeeded in enlisting the ARDC, I will pursue the matter.

Sincerely,


Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189
248-767-4895
beverlymann2@yahoo.com

cc: John B. Whiton, c/o Kenneth Jablonski
    Robert J. Verrando
    Andrew J. Kohn
    Sen. Patrick J. Leahy
    Rep. John Conyers Jr.
    Sen.  Charles E. Grassley
    Rep. F. James Sensenbrenner, Jr.

**EXHIBIT 7**

February 15, 2008

Gino J. Agnello
Frank H. Easterbrook
Michael S. Kanne
Daniel A. Manion
Kenneth F. Ripple
Ann C. Williams
Ilana D. Rovner
Diane P. Wood
Room 2722
219 South Dearborn Street
Chicago, Illinois 60604
Fax: 312-408-5062

VIA FAX

      Re: In the Matter of Beverly B. Mann, Illinois Attorney Regulation and
           Disciplinary Commission Complaint, No. 06 ch 38.

Dear Mr. Agnello and Judges Easterbrook, Kanne, Manion, Ripple, Williams, Rovner and Wood:

      On January 23, I served each of you with a subpoena requiring your appearance at the offices of the Illinois Attorney Regulation and Disciplinary Commission (ARDC) in Chicago on January 31 at a hearing in the above-identified matter, in which your court is the sole complainant. The subpoenas sought testimony and, with the exception of Judge Rovner, the production of documents from each of you. (The ARDC's subpoenas for appearance at hearings are titled subpoenas *duces tecum*, whether or not the witness also is requested to produce documents.)

      Chief Deputy Clerk Andrew J. Kohn then sent me a letter on your behalf dated January 23 acknowledging proper service of the subpoenas but asserting defenses to compliance with them and indicating that the subpoenas would be ignored—which they were. None of you filed a motion to quash and none of you appeared at the hearing.

      I believe that the defenses you claim do not apply to this matter. In any event, you are not entitled to simply ignore the subpoenas.

      On January 31, the hearing was continued generally, as were the subpoenas. The hearing board chair, John B. Whiton, issued an order requiring counsel to the ARDC Administrator to notify you of this. Mr. Whiton later issued an order setting the continued hearing for April 25, 2008 at 9:30 a.m. and continuing the subpoenas specifically to that date and time.

      You are entitled, of course, to move to quash the subpoenas if you believe you have legitimate grounds to have them quashed, but you are no more entitled than is any other subpoenaed witness to simply ignore the subpoenas. Unless you file a motion to quash, and the motion is granted, you each must comply with the respective subpoena served upon you.

I note, because it is relevant to the matter of your compliance with the subpoenas, the posting on your court's web site, presumably at the instance of Chief Judge Easterbrook, as part of your court's instructions for filing judicial misconduct complaints, a statement titled "Summary of Purpose for the Judicial Conduct and Disability Act of 1980" that reads in full:

> Congress has created a procedure that permits any person to file a complaint in the courts about the behavior of federal judges—but not about the decisions federal judges make in deciding cases. [Above] is a link to the rules that explain what may be complained about, who may be complained about, where to file a complaint, and how the complaint will be processed.
>
> There is also a link to the form you must use.
>
> Almost all complaints in recent years have been dismissed because they do not follow the law about such complaints. The law says that complaints about judges' decisions and complaints with no evidence to support them must be dismissed.
>
> If you are a litigant in a case and believe the judge made a wrong decision—even a very wrong decision—you may not use this procedure to complain about the decision. An attorney can explain the rights you have as a litigant to seek review of a judicial decision.
>
> THE JUDICIAL CONDUCT AND DISABILITY ACT STUDY COMMITTEE, IMPLEMENTATION OF THE JUDICIAL CONDUCT AND DISABILITY ACT OF 1980, A REPORT TO THE CHIEF JUSTICE 120-121 (2006).

I question the veracity of two sentences in that statement. It certainly is true that almost all complaints in recent years have been dismissed, but according to the cited 2006 Report to the Chief Justice (which is known as the Breyer Report), and according to the Draft Rules Governing Judicial Conduct and Disability Proceedings Undertaken Pursuant to 28 U.S.C. §§ 351-364, proposed by the Judicial Conference's Committee on Judicial Conduct and Disability of the Rules and scheduled for a vote by the full Judicial Conference on March 11, 2008, judicial misconduct complaints were routinely dismissed improperly based upon erroneous interpretations of the statute.

The respective chief judges and, when appealed, the circuits' judicial counsels were erroneously interpreting virtually all complaints as merits-based simply because the complaint alleged judicial misconduct by the judge who was presiding in the case in which the alleged misconduct occurred; the statute, in other words, was being interpreted tautologically to preclude even overt misconduct (e.g., improper *ex parte* communications) as long as the misconduct affected the outcome of the litigation. The chief judges and circuit judicial counsels also were erroneously interpreting the statute as requiring the dismissal of complaints on that basis that the complainant could appeal from the adverse ruling that resulted allegedly from the misconduct. The draft Rules make clear that these grounds for dismissal were improper under the law as it existed, and prohibit further interpretation of the law to permit (much less require) dismissal of complaints upon those and other specified erroneous regularly-stated grounds for dismissal.

Numerous complaints, in other words, were not being dismissed because the complaint itself did not follow the law about such complaints but instead because those charged with effectuating the law—the circuits' chief judges and judicial conferences—were not following the law about such complaints. You may access the Draft Rules at http://www.uscourts.gov/library/judicialmisconduct/RulesRevised121307.pdf. If approved by the Judicial Conference, they will become effective on April 11.

More pertinent to the matter of your obligation to comply with the subpoenas, however, is the posted statement's claim that "[t]he law says that complaints about judges' decisions and complaints with no evidence to support them must be dismissed." That surely is true, but, contrary to the implication of the statement, it is not the complainant but instead the chief judge and the judicial counsel that must conduct an investigation into whether or not sufficient evidence exists to proceed with the judicial misconduct complaint process. The reason for that, of course, is clear: complainants normally believe that circumstantial evidence exists to support the complaint, and they state the nature of the circumstantial evidence. Because complainants themselves have no mechanism for discovery—a prohibition meticulously enforced by the judges themselves, via such edicts as bars to disclosures by their law clerks and protections of internal court memoranda—they usually cannot produce direct or even documented circumstantial evidence of the misconduct. If an investigation is to occur, it must be done via the misconduct procedure itself.

It is partly for this reason that a bill is pending in Congress, and has been reintroduced at the end of each of the last few congresses, that would establish an Office of Inspector General of the Judicial Branch. See H.R. 5219 and S. 2678. It is hardly a secret that the Breyer Report was commissioned, and the Draft Rules proposed after a 90-day period of public comment to the Judicial Conference Committee on Judicial Conduct and Disability of the Rules, in order to fend off enactment of such a measure. An Office of Inspector General of the Judicial Branch would, of course, have the authority to conduct investigations in order to determine the extent, if any, that evidence exists to support the misconduct allegations.

I plan to notify the Judicial Conference Committee on Judicial Conduct and Disability of the Rules and the House and Senate Judiciary Committee that you take the position that you are entitled to ignore the subpoenas in this matter.

Truly yours,


s/Beverly Mann
Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895

cc: Andrew J. Kohn
    Robert J. Verrando
    John B. Whiton, c/o Kenneth Jablonski
    Ralph K. Winter, Jr.

**EXHIBIT 8**

## BEFORE THE HEARING BOARD OF THE ILLINOIS ATTORNEY REGISTRATIONANDDISCIPLINARY COMMISSION

In the Matter of:

BEVERLY B. MANN,                                   Commission No.  06 CH 38

       Attorney-Respondent,

       No. 3123460.

## EMERGENCY MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

Respondent Beverly B. Mann, *pro se*, files this emergency motion for compliance with eight subpoenas she served on January 23, 2008 respectively upon seven members of the United States Court of Appeals for the Seventh Circuit and the Clerk of that court, mandating their appearances to give testimony, and their production of documents, at the scheduled hearing of this matter on January 31, 2008.  A copy of the subpoenas is attached here as Exhibit 2.[1]  In support, Mann states the following:

On January 28, Mann received a letter, dated January 25, from Andrew J. Kohn, chief deputy clerk of the United States Court of Appeals for the Seventh Circuit, the body of which reads in full:

> Dear Ms. Mann:
>
> The named Judges and the Clerk cannot comply with the subpoena you provided in the above case.  State courts cannot compel a federal official to testify or provide documents.  *See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994).  Moreover, regulations applicable to the federal judiciary set out procedures that must be followed before a determination can be made whether and under what circumstances judicial personnel will be permitted to testify [fn.1].  The eight personal checks which you enclosed with the subpoena are being returned to you with this letter.
>
>               Very truly yours,
>               s/Andrew J. Kohn

Fn. 1 reads:

---

[1] Mann is sending this motion to the Administrator's office via fax and email, without the exhibits.  She will "overnight" hard copies of it, along with the exhibits.

The full regulation governing "Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings" as adopted by the Judicial Conference of the United States in March 2003 can be found at www.uscourts.gov/courts/regulations.htm#regulations.

A copy of the letter accompanies as Exhibit 1.

The letter is remarkable in several respects, not least of them that *Edwards v. Department of Justice* is a Seventh Circuit opinion that concerns access to testimony of federal employees in civil lawsuits filed against the United States; the issue in *Edwards* was the validity of 28 C.F.R. [Code of Federal Regulations] §§ 16.21-16.29, in such civil lawsuits brought by private individuals against the federal government. The regulation does not, and cannot, apply to restrict defendants from access to information and witness testimony in criminal or civil matters brought against them by the federal, or for that matter, the state government.

Federal regulations—whether 28 C.F.R. §§ 16.21-16.29 or the regulations applicable to the federal judiciary that set out procedures that, according to Mr. Kohn, must be followed before a determination can be made whether and under what circumstances judicial personnel will be permitted to testify, or any other regulations—cannot supersede Fifth and Fourteenth Amendment rights to due process of law. It is astonishing and disgusting that a federal court of appeals claims they can and do, in order to shield its own judges and court employees from testifying and producing documents that may well be against their interest, in a legal matter brought by a state at the (repeated) insistence solely of those judges, on behalf of no one *other than* those judges.

To the extent, if any, that the cited regulations would normally apply in a state attorney disciplinary matter, they surely do not apply in this one. By filing the charge against Mann and serving as her sole accuser, these judges and that court have waived any right to invoke them. They, no more than anyone else—say, a former client of the attorney's—can initiate a complaint in which they alone hold the evidence and then deny the attorney access to themselves as witnesses

2

and to their records as documentary evidence once they have succeeded in having the regulatory commission pursue the matter.

On January 28, 2008, Mann filed a Combined Response to Administrator's Motion to Bar Respondent from Presenting Testimony of Judges and Court Clerks, and Motion to Dismiss Complaint, which likens this circumstance to that of the federal government in cases in which it invokes the so-called state-secrets privilege. The United States Supreme Court and lower federal courts have held that claims must be dismissed against someone whose defense to the claim otherwise entitles them to the documentary information or testimony withheld upon the invocation of the privilege; the pursuit of such a claim while withholding the documentary information or testimony violates Fifth or (by analogy) Fourteenth Amendment due process guarantees. Mann incorporates by reference and relies here upon the contents of that Response and Motion.

Wherefore, respondent Beverly Mann moves to compel compliance with the subpoenas at issue.

Respectfully submitted,


s/Beverly B. Mann
Beverly B. Mann
Respondent
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895

DATED: January 28, 2008

**EXHIBIT 9**

February 25, 2008

Honorable Kenneth F. Ripple
208 Federal Building
204 South Main Street
South Bend, Indiana 46601

Honorable Daniel A. Manion
301 Federal Building
204 South Main Street
South Bend, Indiana 46601

Honorable Michael S. Kanne
4th and Ferry Streets
Halleck Federal Building
Lafayette, Indiana 47902

> Re: In the Matter of Beverly B. Mann, Illinois Attorney Registration and Disciplinary
> Commission No.  06 CH 38

Dear Judges Ripple, Manion and Kanne:

Enclosed is a copy of a Petition for Rule to Show Cause Pursuant to Rule 754(e), Article VII, of the Rules of the Supreme Court of Illinois Supreme Court of Illinois on Admission and Supreme Court of Illinois Discipline of Attorneys that I have sent today to the Illinois Supreme Court in the above-identified matter.  You are a subject of the petition.

Also enclosed is a copy of a letter that I faxed to you and others, c/o Andrew Kohn at your court's Chicago office, on February 15 concerning this matter.  I learned on Friday that the letter was not distributed to you and to the others to whom it was addressed; when I inquired about it, Mr. Kohn told me, falsely and irrelevantly, that "service" cannot be made via fax.

The letter was not intended as service of anything; you and the others already were served, as per the order of the ARDC hearing board chair in this matter, with notice that the subpoenas that you and the others ignored were continued to April 25, 2008.  Also, please understand that Illinois law indeed permits service of motions and other such documents via fax, and that this matter is not one pending in your court or in any other federal court; it is pending before the Illinois Attorney Regulation and Disciplinary Commission, and it is Illinois procedural law, not federal procedural law, that applies.

Please also understand that you are no more entitled than is anyone else to simply ignore a subpoena that is duly served upon you.  If you believe you have legitimate grounds to have the subpoena quashed, the procedure for attempting to do so is the same for you as it is for anyone else: you must file a petition with the Illinois Supreme Court asking that that court quash the subpoena.  My petition to the Illinois Supreme Court states why I believe that, Mr.

Kohn's claims to the contrary, you are subject to the requirements of the subpoena in this matter and are not entitled to have it quashed, and certainly are not entitled to simply ignore it. Please read the enclosed copy of that petition.

Also enclosed is a copy of a letter dated February 16 that I sent to First Circuit Senior Judge Ralph K. Winter, Jr. in his capacity as chair of the Judicial Conference Committee on Judicial Conduct and Disability. As indicated below, I am cc'ing him on this letter. If you ignore the subpoena on April 25, I will file a judicial misconduct complaint against you for doing so. The new judicial misconduct rules will be in effect by then, so unlike in the past, Mr. Agnello and Mr. Kohn will be unable get away with returning the complaint to me unfiled; if they try, I will have procedural recourse this time. I also am enclosing copies of letters I am sending today to five key respective members of the House and Senate judiciary committees, and am cc'ing them on this letter.

Please know also that I have the names of your respective law clerks from the relevant time periods, and I plan to try to obtain their addresses and subpoena them to testify, if not in person then by phone, at the April 25 hearing. Also, please keep in mind that your conduct in the ARDC matter is not protected by judicial immunity from lawsuit liability.

I plan to forward my allegations against Easterbrook to the Office of the Department of Justice's Inspector General. My allegations do describe actual criminality by him in 2001 though 2005, and I expect that the matter ultimately will be investigated—whether or not you provide testimony to the ARDC in the matter that your court sought for years finally successfully to bring about.

Please do not threaten or otherwise harass me for having sent these documents directly to your Indiana chambers, and please do not deny that I am entitled to do so. You are not represented by counsel in this matter, and having sent the February 15 letter to Mr. Kohn, and having learned that he did not forward copies to you, I will send the necessary correspondence to your Indiana chambers. As for the judges whose only chambers are in Chicago, I may conclude that I have no choice but to try to obtain their home addresses and send the correspondence to their homes, although suffice it to say that it is not an option I would choose if another one is available.

Neither you nor the others are judges in the ARDC matter; you are witnesses in a matter of your own (or, more accurately, your colleague's own) making.

Truly yours,


Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189
248-767-4895

cc: Hon. Ralph K. Winter, Jr.
    Rep. John Conyers, Jr.
    Rep. F. James Sensenbrenner, Jr.
    Sen. Patrick J. Leahy
    Sen. Arlen Specter
    Sen. Edward M. Kennedy