

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

In the Matter of BEVERLY B. MANN
Attorney-Respondent

In the matter of a Petition for a Rule to
Show Cause against:

GINO AGNELLO, Clerk, United States Court
of Appeals for the Seventh Circuit, FRANK
H. EASTERBROOK, Chief Judge, and
Circuit Judges MICHAEL S. KANNE,
DANIEL A. MANION, KENNETH F.
RIPPLE, ILANA D. ROVNER, DIANE P.
WOOD, and ANN C. WILLIAMS.

No. 08 C 1627
Judge St. Eve
Magistrate Judge Cole

Formerly case No. M.R. 22285
(06 CH 38), Supreme Court of Illinois

## RESPONSE TO MOTION OF THE UNITED STATES TO DISMISS

Beverly Mann, *pro se*, states the following in response to the Motion of the United States to

Dismiss:

## I.

Surely one of the strangest assertions ever made in a court document is the one made here by

the United States Department of Justice, ostensibly on behalf of the United States but transparently

upon the actual behalf of several federal judges and the Clerk of a federal circuit court, that federal

judges and the federal courts are a part of the *executive branch* of the federal government. The

judges and the Clerk do not make this assertion explicitly, of course, but they do nonetheless

assert this. It is the foundation of their claim that the Administrate Procedure Act, ("APA"), 5

U.S.C. §§ 701-706, authorizes the *Judicial Conference* of the United States to promulgate "a

regulation governing testimony of federal judiciary personnel and production of judiciary records

in legal proceedings," and that the "Testimony of Judiciary Personnel and Production of Judiciary

Records in Legal Proceedings, found at www.uscourts.gov/courts/regulations. htm#regulations",

has the same legal effect as, say, the Federal Bureau of Investigation's regulations at issue in

*Edwards v. Department of Justice*,43 F.3d 312 (7th Cir. 1994), or regulations promulgated pursuant to the APA by the Environmental Protection Agency, or the Federal Drug Administration, or the Federal Aviation Administration, or the Federal Consumer Product Safety Commission.

The United States' claim is preposterous, of course, as even a quick reading of the APA and of the Constitution's Articles I, II and III indicate. The APA requires the respective executive administrative agencies, which are established by act of Congress, to promulgate regulations that will effectuate the delineated purpose of the Act that establishes the respective administrative agency. The APA does not address the judicial branch, and the Supreme Court has upheld the constitutionality of the APA against challenges that it violates the doctrine of separation of powers only because the Act limits the agency's authority to promulgate regulations, so that the agency's regulations must effectuate rather than undermine Congress's stated purpose in creating the particular agency. See, e.g., *Massachusetts v. Environmental Protection Agency*, 127 S. Ct. 1438 (2007).

The Judicial Conference of the United States was created by 28 U.S.C. § 331, which does not purport to confer upon the Judicial Conference authority analogous to the authority that the APA confers upon executive administrative agencies, including the authority to promulgate regulations concerning responses to subpoenas. But executive-branch agencies, whether under the APA or otherwise, lack the authority to formulate regulations that remove its members' legal obligation to comply with duly served subpoenas or move to quash them under the applicable set of rules of evidence and rules governing claims of privilege. See, e.g, *Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001) (the regulations "do not create a substantive defense to disclosure", quoting 28 C.F.R. § 16.21(d)). See also *Commonwealth of Puerto Rico*, 490 F.3d 50 (1st Cir. 2007), noting that the propriety of any agency decision to withhold subpoenaed information, whether in

2

document form or in witness-testimony form, must be analyzed under the substantive law of privilege, in that case the law enforcement privilege, a privilege that exists because of the sensitive nature of raw law enforcement investigatory information and the obvious potential for undue harm from the release of such information. From *Commonwealth of Puerto Rico*:

> Under the Housekeeping Act, 5 U.S.C. § 301, federal agencies may promulgate regulations establishing conditions for the disclosure of information. The Supreme Court upheld the validity of such regulations in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468, 71 S. Ct. 416, 95 L. Ed. 417 (1951), explaining that it is appropriate for the head of an agency "to prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers, and property appertaining to'" the agency's business. Within the administrative review process, "[t]he regulations 'provide guidance for the internal operations of the [agency],'" but do not create a substantive defense to disclosure. Kwan Fai Mak v. FBI, 252 F.3d 1089, 1092 (9th Cir. 2001) (quoting 28 C.F.R. § 16.21(d)). In other words, "the regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information." *Id.* (quoting Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 780 (9th Cir. 1994)). Rather, they "simply set forth administrative procedures to be followed when demands for information are received." *Id.*

> Here, pursuant to the Housekeeping Act, the FBI has promulgated regulations explaining that, in deciding whether to release information, its officials should consider "[w]hether disclosure is appropriate under the rules of procedure governing the case" and "[w]hether [*26] [the] disclosure is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a)(1), (2). Situations in which disclosure will not be made include those where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." *Id.* § 16.26(b)(5).

> As we have explained, the *Touhy* regulations are only procedural, and do not create a substantive entitlement to withhold information. Thus, the FBI's compliance with the regulations cannot be a sufficient justification for withholding requested materials. Instead, our review of the reasonableness of the agency's decision focuses on the substantive law concerning privilege, to which we now turn.

The Judicial Conference, in other words, no more has the legal authority than does any other organization—e.g., the Chamber of Commerce; the AFL-CIO—to pronounce its constituents free to ignore duly served subpoenas. But to the extent that the Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings attempts to do so anyway, the regulations make clear that they would have no bearing whatsoever upon the authority of these judges, the Clerk of the Court of Appeals for the Seventh Circuit, and the United States itself, to pronounce

3

themselves free to ignore duly served subpoenas, whether in federal-court proceedings or state-court proceedings. So, not incidentally, does the Code of Conduct for United States Judges. The "Subpoena Regulations Adopted by Judicial Conference" state as part of the introductory comments:

> The regulations are principally procedural in nature, and do not interfere with substantive decisions by individual courts and officers as to the availability of official documents and testimony. For example, the regulations provide that for a subpoena directed to a judge or a member of a judge's personal staff, that judge would be the official authorized to determine the proper substantive response to the subpoena. For a subpoena directed to a court unit or office, the determination would be assigned to the head of the unit or office, in consultation with the chief judge of the court, when appropriate.

> Thus, the only real change that these regulations accomplish is to provide the "determining officer" with well-recognized procedural and substantive grounds to respond to a subpoena. The following is the full text of the subpoena regulations, as adopted by the Judicial Conference in March 2003.

The federal judiciary, by its nature, has no bureaucracy as is relevant to this matter that corresponds to executive-agency bureaucracies by which the APA that allows the respective executive agency to promulgate *a hierarchical procedure* for handling subpoenas for testimony and for the production of documents. Judges do not have supervisors. Nor does the Clerk of a federal circuit court; the judges, including the chief judge, are by law not his or her supervisor or supervisors.

As for the applicability of the Subpoena Regulations Adopted by Judicial Conference to this matter, Section 4(b) of those regulations appear to indicate that the Regulations would not apply in any event. Section 4(b) states in relevant part:

> (b) These regulations do not apply to:
> (1) Legal proceedings in which the federal judiciary or a court or office of the federal judiciary is a party.
> (2) Legal proceedings, arising out of the performance of official duties by federal judicial personnel, in which federal judicial personnel are parties.

Along with its Notice of Removal, the United States filed with this court a copy of the Petition for a Rule to Show Cause that Mann filed with the Illinois Supreme Court on February 28,

4

2008. Mann incorporates by reference and relies here upon the contents of that Petition, which indicates accurately that the Court of Appeals for the Seventh Circuit was, and is, the sole complainant in the A.R.D.C. matter. The background of this matter is described in some detail in a complaint that Mann filed on July 9, 2007 in the United States District Court for the Eastern District of Michigan, captioned *Beverly Mann v. Gino J. Agnello*, no. 07-12857, which remains pending.[1]

A copy of that complaint was made an exhibit to the petition that Mann filed with the Illinois Supreme Court, which is what the United States' removed to this court. Also made an exhibit to that petition was a copy of the complaint filed against Mann in June 2006 by the Illinois Attorney Registration and Disciplinary Commission captioned *In re Mann*, 06 ch 38. The exhibits to that petition were filed with this court as part of the petition. Mann incorporates by reference and relies here upon the contents of the petition and its exhibits.

As the complaint in *Mann v. Agnello*, Eastern District of Michigan no. 07-12857, indicates, three letters of complaint against Mann, submitted at Easterbrook's behest by the Clerk of the Court of Appeals for the Seventh Circuit submitted to the A.R.D.C. over a period of three years—only after the Court of Appeals would not take "No" for an answer and kept filing new complaints against Mann after the A.R.D.C. dismissed the first two—prompted the filing of the A.R.D.C.'s complaint against Mann. Easterbrook is one of the subpoenaed witnesses. The other subpoenaed judges possess knowledge highly relevant to the matters alleged in the A.R.D.C.'s complaint—

---

[1] On November 29, 2007, the district issued an order stating that he was dismissing the lawsuit without prejudice for want of prosecution because Mann did not serve summonses on the defendants within 120 days, even though she did serve them with copies of the complaint and with waiver requests. Mann filed a notice of appeal. On March 20, 2008, the Court of Appeals for the Sixth Circuit issued an order, a copy of which accompanies here as Exhibit 1, notifying Mann that whatever the district judge's intent, he did not actually dismiss the lawsuit; the lawsuit remains pending and will not be deemed dismissed until 150 days after November 29. On March 28, Mann obtained executed summonses from the Office of the Clerk of the District Court for the Eastern District of Michigan, and April 4 she sent the summonses and copies of the complaint to the defendants via certified mail. Mann will file the returns of service, along with a motion to vacate the November 29, 2007 dismissal order, and will notify the Court of Appeals for the Sixth Circuit. Mann will shortly file an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a).

knowledge described in the complaint in *Mann v. Agnello*. The documents subpoenaed directly and materially relate to those matters, as well.

Each of the three letters of complaint was written on that court's official stationary and drafted and signed by one of that court's deputy clerks. Although not technically a party to that matter, the Court of Appeals for the Seventh Circuit and its judges and other court personnel clearly are, by their own choice, every bit as much participants in this legal matter, as is a complaining witness in a criminal matter—say, an assault or fraud case. This legal matter exists because this court and its judges and other court personnel initiated it. There are, obviously, significant procedural due process implications of any denial of access to these witnesses and to that court's relevant internal court documents.

But if the Judicial Conference of the United States has the authority to issue regulations that remove the absolve judges and other court personnel from complying with subpoenas, then presumably the Judicial Conference also has the authority to issue regulations explicitly *requiring* judges and other court personnel to comply with subpoenas. And the Judicial Conference has done exactly that regarding some subpoenas, and the Conference has announced that it is about to do so explicitly regarding precisely the type of subpoenas at issue here.

Mann has corresponded about this matter with Senior Second Circuit Court of Appeals Judge Ralph K. Winter, Jr. in his capacity as chair of the Judicial Conference Committee on Judicial Conduct and Disability. Accompanying are copies of two letters she sent Judge Winter dated respectively February 16, 2008 and February 25, 2008, the contents of which Mann also incorporates and relies upon here. The February 16 letter quotes in full a several-paragraph comment that Mann emailed to the Committee on Judicial Conduct and Disability on October 15, 2007, the final day of the period in which that Committee was inviting comment about its proposed "Rules for Judicial-Conduct and Judicial-Disability Proceedings." In December 2007,

6

that Committee issued significantly revised proposed Rules that reflected recommendations and concerns expressed to the Committee during that comment period—including Mann's. Two changes appear to have been made in direct response to Mann's comments. The Committee issued two more amended drafts making minor changes to proposed Rules and presented them to the full Judicial Conference of the United States, which on March 12, 2008 voted to adopt them, effective April 10, 2008.

Mann's October 15, 2007 comment to the Committee on Judicial Conduct and Disability referenced an important aspect of the matter described in the complaint in *Mann v. Agnello* filed in the Eastern District of Michigan, but it did not identify the judge whose conduct is at the heart of the matter. Mann's February 16, 2008 letter to Judge Winter, however, did, and was accompanied by copies of the respective complaints in *Mann v. Agnello* and in *In re Mann*. The letter discussed the decision of Easterbrook and the other subpoenaed federal judges to claim in a letter to Mann drafted and signed by deputy Seventh Circuit Clerk Andrew Kohn that they and Court of Appeals Clerk Gino Agnello were not obligated to comply with the subpoena and that they would simply ignore the subpoenas. Mann enclosed a copy of Mr. Kohn's letter.

That letter is what the Notice of Removal is referencing in stating that "Mann was informed by the federal court that under the regulation governing testimony of federal judiciary personnel and production of judiciary records in legal proceedings, her requests would not be complied with."

In her February 16 letter, Mann also told Judge Winter that Mr. Agnello and the judges did not file motions to quash the subpoenas but instead simply failed to comply with them; that the chair of the Illinois Attorney Registration and Disciplinary Commission (ARDC) hearing board assigned to the matter had adjourned the hearing to April 23, 2008 and had continued the subpoenas to that date; that the chair, John B. Whiton, then arranged for service of that notice to

7

Agnello and the judges; and that the express purpose of the adjournment of the hearing and the continuance of the subpoenas was to enable Mann, pursuant to Rule 754(e), Article VII, of the Rules of the Supreme Court of Illinois Supreme Court of Illinois on Admission and Discipline of Attorneys, to petition the Illinois Supreme Court to compel compliance with the subpoenas.

Mann's February 25 letter to Judge Winter was a follow-up her earlier one. Its purpose was to forward to him a copy of a letter she had sent that day to the respective Indiana chambers of Judges Ripple, Kanne and Manion, and also to forward to him a copy of a letter she was sending to Glenn A. Fine, the Department of Justice Inspector General, asking that his office consider investigating the allegations contained in he complaint in *Mann v. Agnello*, a copy of which Mann forwarded to him.[2] Copies of these letters also were made exhibits to the petition to the Illinois Supreme Court and thus are a part of the record here. On March 7, 2008, the Judicial Conference Committee on Codes posted on the United States Courts web site's News Releases page a "Request For Public Comment On Proposed Revisions To Code Of Conduct For United States Judges". The news release reads in part:

> **March 7, 2008** — The Committee on Codes of Conduct of the Judicial Conference of the United States seeks public comments on proposed revisions to the Code of Conduct for United States Judges. The proposed revisions are based in large part on revisions adopted by the American Bar Association in February 2007, amending the ABA Model Code of Judicial Conduct.
>
> Comments may be submitted to the Committee on Codes of Conduct by e-mail at the following address: codecomments@ao.uscourts.gov. In order to be considered, **comments must be received by April 18, 2008**. [Boldface in original.] All commenters must identify themselves and their institutional affiliation, if any.
>
> The proposed revised Code of Conduct for United States Judges is on-line in two versions: proposed new Code of Conduct in its entirety, and the revisions proposed to the current Code of Conduct.

---

[2] On April 7, an investigator from the Office of Inspector General phoned Mann and told her that that Office's headquarters instructed that the documents be forwarded, along with a cover letter, to the Clerk of the Court of Appeals for the Seventh Circuit as a judicial misconduct complaint, and that that was done a few weeks ago.

The news release and the proposed revised Code of Conduct can be downloaded at http://www.uscourts.gov/Press_Releases/2008/code_comments.cfm.    Several of the proposed changes appear to have been inspired, at least in part, by Mann's letters and the forwarding of the other documents to Judge Winter, but one proposed change in particular, which was added at the end of the formal Commentary to Canon 3(B) almost certainly is, and it refutes both the rather silly contention that this matter is removable under 28 § 1447 and—explicitly—that any regulation promulgated by the United States judiciary pertains to the testimony and document production at issue here.   The proposed revised Canon 3(B)(3) has only a one-word change from the current Canon.  In the version that shows both the current version and the changes—the revisions are reflected by strikethroughs of the old and red type (which appears here as light gray type) for the new—proposed revised Canon 3(B)(3) reads:

> A judge should ~~initiate~~ take appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.

The proposed revised formal Commentary to Canon 3(B)(3) reads:

> Appropriate action may include direct communication with the judge or lawyer who has ~~committed the violation~~ engaged in unprofessional conduct, other direct action if available, and reporting the ~~violation~~ misconduct to the appropriate authorities, or a confidential referral to an assistance program when the judge believes that a judge or lawyer's misconduct is caused by drugs, alcohol, or a medical condition. *Appropriate action may also include responding to a subpoena to testify or otherwise participating in judicial or lawyer disciplinary proceedings; a judge should be candid and honest with such disciplinary authorities.*  [Italics added.]

"Appropriate action may also include responding to a subpoena to testify or otherwise participating in a judicial or lawyer disciplinary proceedings; a judge should be candid and honest with such disciplinary authorities."

Another change—a change to Canon 3B(2) and the addition of a formal Commentary to it when no Commentary to that Canon subpart appears in the current Code—appears to directly

9

address and rebut Agnello's claims of privilege, or whatever it is he is claiming. The revised

Canon 3B(2), as proposed, provides:

> A judge should require court officials, ~~staff~~, court personnel, and others subject to the judge's direction and control, ~~to observe the same standards of fidelity and diligence applicable to the judge~~ to act in a manner consistent with the judge's obligations under this Code.

The revised Commentary, all of it newly proposed, reads:

> A judge is responsible for his or her own conduct and for the conduct of others, such as court personnel, when those persons are acting under the judge's direction or control. A judge may not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when such conduct would violate the Code if undertaken by the judge.

Several other proposed revisions of the Code—e.g., to Canon 3(A)(3), which adds, "The duty

to be respectful includes the responsibility to avoid comment or behavior that can reasonably be

interpreted as *harassing* or manifesting prejudice or bias"—also appear related to Mann's letters

and accompanying documents. [Italics added.]   Proposed revised Canon 2(B), however, is

relevant for its proposed changes but, more significantly, for what remains identical to the current

Code—in both the Canon itself and in the Commentary about it. The proposed revised Canon

2(B) reads:

> A judge should not allow family, social, political, financial, or other relationships or interests to influence judicial conduct or judgment. A judge should not lend the prestige of the judicial office to advance the private interests of the judge or others; nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

There are no proposed deletions from that Canon as it currently exists. The sentence that provides

that "[a] judge should not testify voluntary as a character witness" is in the current Code. The

Commentary states:

> The testimony of a judge as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be misunderstood to be an official testimonial. **This Canon, however, does not afford the judge a privilege against testifying in response to an official summons.** [Boldface added.] Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

Enough said—or so Mann presumes—regarding these witnesses' claims that a privilege exists that categorically relieves them from complying with duly served subpoenas to testify and to produce documents relevant to a matter that concerns allegations of misconduct and illegality, including fraudulent appropriation of the names of other judges on court orders, and including *ex parte* manipulation of the outcome of litigation in a court that is unrelated to their own. These judges can no more legitimately claim privilege in order to avoid testifying about this than they could to avoid testifying in, say, a judicial-bribery trial.

## II.

Enough said also, or so Mann presumes, concerning these witnesses' claims that because they are federal judges and federal court employees, state courts lack the authority to compel their appearance to testify under oath in matters such as the one at issue here. The Judicial Conference of the United States begs to differ with respect to both of those claims. But the United States claims the doctrine of sovereign immunity—a doctrine that can apply only to claims of *monetary damages* and only to such claims against the United States itself—applies nonetheless to bar Mann from obtaining equitable relief concerning the decision by these subpoenaed witnesses to ignore the subpoenas at issue. The United States asserts at p. 2, paragraph 3, that "[t]he matter is nominally against federal court officers but it is actually an action against the United States, because it attempts to compel official-capacity actions governed by federal court regulation." As explained above, federal court regulation neither controls nor attempts to bar the testimony of these judges and the court Clerk, irrespective of whether or not the subpoenas attempt to compel official-capacity actions.

But the subpoenas attempt no such thing. These judges are not Illinois state-court judges, and neither they nor the Clerk of the Court of Appeals for the Seventh Circuit is a State of Illinois

11

official or employee. This is not an action against the United States. Mann notes also that in its

Notice of Removal, the United States asserts:

> The matter is an action against the United States (because it attempts to compel official-capacity actions by federal officials) and thus is subject to removal to this court pursuant to 28 U.S.C. § 1442(a)(1). Alternatively, this is an action against officers of the courts of the United States for actions under color of their office or in the performance of their duties and thus subject to removal to this court pursuant to 28 U.S.C. § 1442(a)(3).

If indeed this is an action against officers of the courts of the United States for actions under color

of their office or in the performance of their duties and thus subject to removal to this court

pursuant to 28 U.S.C. § 1442(a)(3), then, obviously, its dismissal would be improper, and the

motion offers no ground upon which such a dismissal would be proper.[3]

The United States claims at p. 2, paragraph 4 of its Motion to Dismiss that "[a]bsent a waiver

of sovereign immunity, a state court has no jurisdiction to enforce a subpoena to federal officials,

because they are immune from state court process unless Congress consents to the jurisdiction of

that court."   In support of this contention, it cites *United States v. Sherwood*, 312 U.S. 584,

586(1941). ("The United States, as sovereign, is immune from suit save as it consents to be sued

... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain

the suit.")

The United States is conflating the United States itself with federal officials, and subpoenas in

legal matters in which the United States is not a party with lawsuits in which it is. Best as Mann

can tell, it is claiming that the *United States* has sovereign immunity from subpoenas for *testimony*

by federal officials and from subpoenas for internal documents because the *United States* has

sovereign immunity from certain types of *lawsuits*. The claim not only is utterly unsupported and

---

[3] Accompanying this response is a motion pursuant to 28 U.S.C. § 1447(c) for remand back to the Illinois Supreme Court. Also accompanying is a motion for recusal of all district and magistrate judges within the Seventh Circuit, as there exists an obvious conflict of interest in any district judge within that circuit hearing a matter in which that circuit's appellate judges have a direct interest, either as parties, as they themselves claim, or as individuals who are challenging subpoenas served upon and who are contesting a petition or motion for a rule to show cause why they should not be held in contempt for ignoring duly served subpoenas.

12

flatly erroneous; it also is downright bizarre. Subpoenas are not legal complaints initiating lawsuits; if they were, then everyone served with a subpoena would be entitled as a matter of course to file an "answer" to the subpoena, to cross-examine the other parties, and to engage in discovery to the extent that the parties whose names appear in the caption of the case are entitled to do so.

The United States brings the motion to dismiss "on behalf of GINO AGNELLO, Clerk, United States Court of Appeals for the Seventh Circuit, FRANK H. EASTERBROOK, Chief Judge of the United States Court of Appeals for the Seventh Circuit, and Circuit Judges MICHAEL S. KANNE, DANIEL A.MANION, KENNETH F. RIPPLE, ILANA D. ROVNER, DIANE P. WOOD, and ANN C.WILLIAMS, by *its* attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois." It cites *United States v. Sherwood*, 312 U.S. 584, 586(1941), for the supposed proposition that "[a]bsent a waiver of sovereign immunity, a state court has no jurisdiction to enforce a subpoena to federal officials, because they are immune from state court process unless Congress consents to the jurisdiction of that court."

But, as the United States concedes in the parenthetical sentence that follows that one — ("The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") — *Sherwood* holds no such thing; it concerns the United States itself, not United States officials. United States officials indeed may be sued in their official capacity. See, e.g., *Ex Parte Young*, ****. And apart from the dubious proposition that the subpoenas constitute a *lawsuit* against these witnesses, the claim that these people—with the exception of Gino J. Agnello, the Clerk of Court—are being sued or subpoenaed in their official capacity is factually erroneous and exhibits the ultimate in hubris. These judges are not being subpoenaed in their official capacity. One of them, Frank H. Easterbrook, is being subpoenaed in his capacity as a complaining witness and the

13

others are being subpoenaed in their capacity as occurrence witnesses.   Indeed, Fed. R. Civ. P. 4(i)(3) provides:

> To serve a United States officer or employee sued *in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf* (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g). [Italics added.]

So if, as the United States claims on their behalf, a subpoena does constitute a lawsuit against the subpoenaed witness, they can be "sued".   In this matter, they, as well as the United States itself, can be "sued" via service of a state-court subpoena, and they can be compelled by a state court to comply with the subpoenas.

The United States asserts, citing *Cole v. United States*, 657 F.2d107 (7th Cir. 1981), that "[a] party seeking to invoke state court jurisdiction over the United States has the burden of pointing to a Congressional act that gives such consent."   But that is neither an accurate representation of the facts here—as illustrated above, the United States is not being subpoenaed, and in any event the subpoenaed judges are being subpoenaed in their individual capacities—nor a complete account of relevant law, even regarding the United States itself.   Sovereign immunity is an affirmative defense and as such it can be waived not only via Congressional Act but also by any conduct on its part that waives or forfeits it.   In that sense, it is analogous to personal jurisdiction.   See *Insurance Corp. v. Compagne Des Bauxites*, 456 U.S. 694 (1982).   The United States consented to the jurisdiction of the Illinois Supreme Court when its Clerk, acting at the behest of Easterbrook, submitted in United States stationary the three consecutive complaints about Mann about which these witnesses have been subpoenaed by Mann to testify and to produce documents.

Respectfully submitted,

s/Beverly Mann
Beverly Mann
*Pro se*
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895
beverlymann2@yahoo.com

## Certificate of Service

I certify that on April 8, 2008, I will file the foregoing with the Clerk of Court, and that on that date I will send notification via fax or email or U.S. mail to the following:

Thomas P. Walsh
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
thomas.walsh2@usdoj.gov

Clerk, Attorney Registration and
Disciplinary Commission of the
Illinois Supreme Court
130 East Randolph Drive, 11th Floor
Chicago, Illinois 60601

Robert V. Verrando
Senior Counsel, Illinois ARDC
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601

Ronald Rascia
Assistant Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601

s/ Beverly Mann
Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189
Ph: (248) 767-4895
beverlymann2@yahoo.com