

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

**FILED**

MAY 1 2 2008 T C
May 12 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

In the Matter of BEVERLY B. MANN
Attorney-Respondent

In the matter of a Petition for a Rule to
Show Cause against:

GINO AGNELLO, Clerk, United States Court
of Appeals for the Seventh Circuit, FRANK
H. EASTERBROOK, Chief Judge, and
Circuit Judges MICHAEL S. KANNE,
DANIEL A. MANION, KENNETH F.
RIPPLE, ILANA D. ROVNER, DIANE P.
WOOD, and ANN C. WILLIAMS.

No. 08 C 1627
Judge St. Eve
Magistrate Judge Cole

Formerly case No. M.R. 22285
(06 CH 38), Supreme Court of Illinois

## REPLY IN SUPPORT OF MOTION FOR REMAND PURSUANT TO
## 28 U.S.C. § 1447(a) AND (c)

Beverly Mann, *pro se*, states the following in reply in support of her motion pursuant to 28

U.S.C. § 1447(a) and (c) for remand of this matter back to the Illinois Supreme Court and

alternatively for transfer of this matter to the Eastern District of Michigan or to another district

outside the Seventh Circuit:

### I.

The United States, in its Reply in Support of the United States' Motion to Dismiss and

Response to Petitioner Mann's Motion to Remand and to Recuse [Doc. # 10], which the United

States filed with this court on April 16, 2008, effectively concedes that this court cannot hear this

matter. In that Reply/Response, the United States invokes the order issued ostensibly by a three-

judge panel of the United States Court of Appeals for the Seventh Circuit on October 16, 2001 but

actually issued solely by Judge Frank H. Easterbrook, a party to this matter, that permanently

barred Mann from filing any "papers" in any federal court within the Seventh Circuit. It is, of

course, precisely the issuance of that order and others that Judge Easterbrook alone issued and

upon which he falsified the names of a total of three other members of his court—Judges Michael

S. Kanne, Daniel A. Manion and Kenneth F. Ripple, each of whom also has been subpoenaed to testify in the matter—that is a primary subject at issue in the A.R.D.C. matter and that these subpocnaed witnesses are desperate to avoid having to testify about.

Whatever the outcome of this matter, they will, however, eventually have to provide information in a judicial misconduct proceeding concerning Easterbrook's falsification of the names of the other judges on the several orders at issue. It is Mann's understanding, based upon a letter Mann received last month from an investigator in the Department of Justice's Office of Inspector General in response to a letter she sent that Office, that Second Circuit Court of Appeals Judge Ralph K. Winter, Jr., in his capacity as chair of the Judicial Conference of the United States' Committee on Judicial Conduct and Disability, has initiated a misconduct complaint concerning the matter, in response to letters Mann had sent him. (Mann suspects, but does not know, that the Judicial Conference's Executive Committee has referred the matter either to the Judicial Conference of the Ninth Circuit, chaired by Chief Judge Alex Kozinski, or to the Judicial Conference of the Third Circuit, chaired by Chief Judge Anthony J. Scirica, who became the chair of the Executive Committee on May 1.)

In any event, the new Rules concerning judicial misconduct and disability complaints, proffered by the Committee on Judicial Conduct and Disability and adopted by the Judicial Conference effective April 10, 2008, embraced Mann's recommendation to the Committee that the Rules prohibit a circuit court's Clerk from refusing to accept and process a judicial misconduct complaint, which is what occurred when Mann submitted one to the Seventh Circuit Clerk regarding the substantive matters about which she has subpoenaed the judges and the court Clerk to testify in the A.R.D.C. matter. Mann had submitted a comment to that Committee during the formal public-comment period, suggesting such a Rule and detailing why she was suggesting it.

Case 1:08-cv-01627    Document 12    Filed 05/12/2008    Page 3 of 13

There is, obviously, a significant question regarding the propriety of these defendants' decision to remove this matter to a court in which they then would claim that Mann is barred from litigating, and assert an entitlement to win by default because Mann is barred from litigating in that court. Mann plans to file a misconduct complaint alleging that this and another recent act by Easterbrook, discussed below in Part II, indeed constitute judicial misconduct. Because she presumes that, the new Rules notwithstanding, Easterbrook will invoke the *Mack* order to prohibit Agnello from accepting and processing the misconduct complaint, she will send a copy of it to the Judicial Conference Committee on Judicial Conduct and Disability. But this raises a question for the district judge in this matter: the new proposed Code of Conduct, which presumably will be adopted shortly by the Judicial Conference, requires judges to file a misconduct complaint against another judge if they become aware of another judge's possible misconduct.

Mann notes the procedural impropriety of the invocation of the *Mack* order in a reply in support of a motion to dismiss, rather than in a separate motion or as part of another motion. Replies, after all, normally cannot be responded to, and clearly this is a separate issue that the motion to dismiss did not present. Far more significant, though, is the substantive claim by the United States that this matter can be resolved in a court in which one of the parties is barred from litigating the matter and in which therefore the other parties openly submit *ex parte* filings that, because they are unopposed by virtue of the bar imposed upon the opponent, will be granted as unopposed. This claim is so palpably violative of Mann's Fifth Amendment right to due process of law that it is, in its own way, given that it is the United States and federal appellate judges who are asserting it, sort of funny.

Relatedly, on April 18, 2008, during the public-comment period for commenting on proposed changes to the Code of Conduct for United States Judges, Mann submitted to the Judicial Conference Committee on Codes of Conduct a suggestion that stated the following:

3

Dear Committee members:

The Supreme Court commented almost as an aside two years ago in *Day v. McDonough*, 127 S. Ct. 1394 (2006), that "[o]f course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." Yet judges routinely act on their own initiative without according the parties fair notice and an opportunity to present their positions. Appellate judges do so citing case law that permits appellate courts to affirm the holding below upon the basis of anything in the record that supports affirmance on grounds other than those cited by the lower court.

Often, the stated *sua sponte* basis is erroneous as a matter of fact or law, and had prior notice in accord with basic due process requirements been accorded, the outcome of the case at the level at which the court acted on its own initiative would have been different. Yet, virtually without fail, motions for reconsideration are denied, either without comment or with an order citing some new *sua sponte* basis that also is erroneous. ...

It is hard to imagine a more blatant denial of procedural due process than when the district judge or appellate panel decides a case on the basis of *sua sponte* grounds without first providing notice of the ground and an opportunity to brief the issue. It also is hard to imagine a clearer denial of equal protection: after all, is there really any possible legitimate basis for denying procedural due process simply because it is the court rather than one of the parties that has raised the issue?

One particular appellate judge, Chief Seventh Circuit Judge Frank Easterbrook, has an undeniable penchant for surprise *sua sponte* rulings, employing the tactic in bizarre ways. For this judge, the attraction of the device appears to be largely the fact of the element of surprise itself; this judge, who is known for as a sadistic personality, seems to derive pleasure simply from the astonishment it will cause the victim of it—astonishment stemming, of course, from the expectation that procedural due process, specifically prior notice and opportunity to address the issue, is an ironclad guarantee.

Please consider amending the Code of Conduct for United States Judges to make clear that "[o]f course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions," and that a failure to do so constitutes judicial misconduct.

This too, of course, stems from the initial sequence of orders in which Easterbrook falsified the names of Judges Kanne and Manion, neither of whom participated at all in deciding that appeal, and issued the so-called *Mack* order that the United States (surely at the behest of Easterbrook) now invokes to try to obtain default orders against Mann in this matter.

Mann is in highly esteemed company in her assertion that *sua sponte* action by a court, without providing prior notice and opportunity to address the issue—even apart from the near-certain fact

4

that in this matter, a judge did so in a series of orders that required participation and approval by

two other judges and that he falsified the names of two other judges on those orders—constitutes a

bald deprivation of due process and judicial misconduct.  In his now-famed opinion in *In re*

*Complaint of Judicial Misconduct*, 425 F.3d 1179 (9th Cir. 2005), the case that prompted the

process by which the new Rules concerning judicial misconduct complaints, Ninth Circuit Judge

Alex Kozinksi wrote:

> Judicial action taken without any arguable legal basis—and without giving notice and an
> opportunity to be heard to the party adversely affected--is far worse than simple error or
> abuse of discretion; it's an abuse of judicial power that is "prejudicial to the effective and
> expeditious administration of the business of the courts." See 28 U.S.C. § 351(a); Shaman,
> Lubet & Alfini, *supra*, § 2.02, at 37 ("Serious legal error is more likely to amount to
> misconduct than a minor mistake. The sort of evaluation that measures the seriousness of
> legal error is admittedly somewhat subjective, but the courts seem to agree that legal error
> is egregious when judges deny individuals their basic or fundamental procedural rights.");
> *In re Quirk*, 705 So. 2d 172, 178 (La. 1997) ("A single instance of serious, egregious legal
> error, particularly one involving the denial to individuals of their basic or fundamental
> rights, may amount to judicial misconduct." (citing Jeffrey M. Shaman, Judicial Ethics, 2
> Geo. J. Legal Ethics 1, 9 (1988))).

Mann also is in esteemed company—including the very same esteemed company—in her

assertion that the *Mack* order itself, even apart from the fact of its issuance by a single appellate

judge who falsified the names of two other judges on that order, constitutes a violation of the First

Amendment's petition clause and the Fifth Amendment's due process clause.  Mann incorporates

by reference and relies here upon the separate dissents by Ninth Circuit Judge Marcia S. Berzon

(in which eight of her colleagues including Judge Kosinski joined) and Judge Kozinski (in which

two of his colleagues joined) from denial of *en banc* review in *Molski v. Evergreen Dynasty Corp.*,

2008 U.S. App. LEXIS 7372 (9th Cir. Apr. 7, 2008), amended by *Molski v. Evergreen Dynasty*

*Corp.*, 2008 U.S. App. LEXIS 8664 (9th Cir. Cal., Apr. 22, 2008).  She also notes that what

occurred in her case, even had the sequence of orders *actually* been issued by a three-judge panel,

would not have come even close to passing muster even under the initial panel opinion in *Molski*,

see *Molski v. Evergreen Dynasty Corp* 500 F.3d 1047 (9th Cir. 2007)—or, for that matter, with any

other opinion issued by any federal circuit court. Ever. Judge Berzon's dissent begins:

> Pre-filing orders infringe the fundamental right to access the courts. They are properly
> reserved for extreme situations where there is absolutely no possibility that the allegations
> could support judicial relief *and* filing the suit is a burden on both the court and the opposing
> party -- a costly exercise in futility. Under those circumstances, less draconian sanctions will
> not suffice. Because, by any measure, this is not such a case, I respectfully dissent from the
> denial of rehearing en banc.
>
> The First Amendment right to "petition the Government for a redress of grievances" -- which
> includes the filing of lawsuits -- is "one of 'the most precious of the liberties safeguarded by
> the Bill of Rights.' " BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524, 122 S. Ct. 2390, 153
> L. Ed. 2d 499 (2002) (quoting United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217,
> 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967)). ...
>
> Because the right to access the courts implicates due process and First Amendment rights,
> courts have been exceedingly reluctant to restrict such access. We have noted that because a
> pre-filing order "restricts an individual's access to the court system, it is an extraordinary
> remedy that should be narrowly tailored and rarely used." Moy v. United States, 906 F.2d
> 467, 470 (9th Cir. 1990). This is so even though litigants and lawyers covered by a pre-filing
> order are not entirely enjoined from filing suits covered by the order, but must obtain the
> court's approval first. This pre-clearance requirement is in itself a serious imposition on the
> right to access the courts: "Among all other citizens, he is to be restricted in his right of access
> to the courts. As far as he is concerned, his future filings run the risk of delay and even
> possible rejection before he can call upon defendants to respond to those filings. . . . We
> cannot predict what harm might come to him as a result, and he should not be forced to
> predict it either. What he does know is that a Sword of Damocles hangs over his hopes for
> federal access for the foreseeable future." *Id.*
>
> Because it interferes with the basic right of court access, "[a]n injunction cannot issue merely
> upon a showing of litigiousness." *Id.* Rather, "[t]he plaintiff's claims must not only be
> numerous, but also be *patently without merit.*" *Id.* (emphasis added). ...

In Mann's case, of course, she has been barred *permanently* and *completely* from filing any

"papers" in any federal court within the Seventh Circuit, as sanction for her refusal to pay a

fabricated monetary sanction imposed in a falsified and thus void *ad ab initio* order.

Easterbrook has erected a due process Ponzi scheme concerning Mann, the final step of which

is to arrange for removal of this matter to a court in which he has barred Mann from litigating.

First, he asserted *sua sponte*—and without any prior notice or opportunity to respond—an utterly

out-of-the-blue jurisdictional ground for dismissing the case, and in the same order in which he

6

asserted it, dismissed the case for lack of subject-matter jurisdiction. The jurisdictional ground was based upon flatly erroneous federal and Illinois state law. In the *same* order, he issued a substantial monetary sanction against Mann and, *also in the same order*, mandated that Mann's opponent submit a bill for attorneys' fees that would constitute the monetary sanction that Mann was ordered to pay, the intent being to advertise—to borrow from another opinion by Judge Kozinski, this one a dissent in *Molski v. Evergreen Dynasty Corp.*, 2008 U.S. App. LEXIS 7372 (9th Cir. Apr. 7, 2008)—that the decision was "cast in cement by the time of the 'hearing,' or, in this case, by the time the *sua sponte* show-cause order was issued. He alone denied the show-cause response—which was Mann's first and only opportunity to address the stated grounds for the outcome of the appeal itself as well as for the imposition of a sanction—but once again falsified the names of Kanne and Manion on the order.

Then, when Mann did not pay the sanction, he alone issued a so-called all-encompassing *Mack* order, and falsified the names of Kanne and Manion on that order, too. When a day later, on October 17, 2001, Mann submitted a misconduct complaint pursuant to 28 U.S.C. § 455 against Easterbrook concerning the matter, he instructed the Clerk to refuse to accept and process it, and had the Clerk mail it back to Mann along with a cover letter stating that the *Mack* order applied even to judicial misconduct complaints, including a complaint alleging misconduct that resulted in the *Mack* order.

At that point, the entire sequence of events was (with the exception of the assistance of the Clerk and various deputy clerks) a single-person operation, operating under the guise of a panel of Seventh Circuit judges and of the court itself. The *Mack* order stated that Mann after the expiration of two years Mann could request that it be lifted. She did. Her motion was denied without explanation in an order that bore the names of Easterbrook, Kanne and Manion. Mann believes that Kanne and Manion indeed agreed to that order; by then they were well aware of what

7

had transpired earlier and, if they on their own did not recognize that Mann planned to file a judicial misconduct complaint concerning the matter, Easterbrook surely apprised them. This would have placed them in the position that they are now in: being required to reveal the specifics of what transpired. And now these judges and the Seventh Circuit Clerk, along with the United States—having removed this matter to a federal district court within the Seventh circuit precisely in order to claim by virtue of the *Mack* order an automatic entitlement to the grant of their motion to dismiss the matter with prejudice because Mann is barred from filing any "paper" contesting it—invoke the *Mack* order to make exactly that claim.

## II.

Easterbrook has a deep-seated penchant for secret machinations—both as a judge and now, as it turns out, as a litigant—that result in court orders. The United States, at n. 1 at p. 5 of its Reply/Response, tacitly although unwittingly references one that occurred approximately one such incident that occurred approximately a month ago in *Mann v. Agnello*, No. 07-CV-12857 (E.D. Mich.), and that the Court of Appeals for the Sixth Circuit apparently has taken action, also behind the scenes, to begin to nullify. The United States' n. 1 reads:

> Mann made this claim in her response to the motion to dismiss (*see* p. 5 and fn. 1) as well as in her motion to recuse. She asserted that her lawsuit in the Eastern District of Michigan against the same Seventh Circuit court officers involved in this matter "remains pending" and that she has recently attempted to serve the defendants by mail. However, she apparently misread the Sixth Circuit's order (attached as Exhibit 2) on which she based her claim that her suit is still pending in the district court, and the district court in Detroit has issued an order invalidating the summonses Mann served, because the case was dismissed last November and is currently on appeal. Order, *Mann v. Agnello*, No. 07-CV-12857 (E.D. Mich. April 11, 2008)(attached as Exhibit 3).

Mann's referenced claim was that *Mann v. Agnello*, No. 07-CV-12857 (E.D. Mich. April 11), remains pending. The referenced April 11, 2008 order was issued, as the order itself makes clear, at the secret *ex parte* behest of at least one of the defendants in that lawsuit. The *ex parte*

communicator, whom Mann (strongly) suspects was Chief Seventh Circuit Deputy Andrew J. Kohn, acting at the instruction of Easterbrook (as he has, openly, in the mater that is now in *this* court) contained a flatly false statement of fact and a flatly false statement of federal law.

It also defied an order entered on March 20, 2008 by the Court of Appeals for the Sixth Circuit in *Mann v. Agnello, et al.*, No. 08-1137, which was the sole basis upon which Mann obtained the summonses at issue from the Eastern District of Michigan Clerk on March 28, 2008. Contrary to the *ex parte* communicator's claim, Mann made no representation that an amended complaint had been filed; she simply showed the Sixth Circuit order to the deputy clerk, who verified it's legitimacy and that in fact, as the Court of Appeals stated, no Rule 58 judgment had been issued, and—as required by Rule 4(b)—issued the summonses. On the afternoon of April 11, the same afternoon on which the district court issued the order that the United States invokes, Mann filed her service-of-summons affidavits. The district judge, however, initially would not permit them to be docketed.

On April 14, Mann filed two motions: one to vacate the April 11 order, the other for recusal of the district judge because he had been a party to an *ex parte* communication that itself will become a subject of the litigation. Also on April 14, Mann had a copy of those motions, along with a cover letter, delivered to the Court of Appeals for the Sixth Circuit. On April 14, apparently at the instruction of a Sixth Circuit judge (Mann was told by a deputy clerk there that her correspondence with that court is reviewed by a judge, who then instructs the deputy clerk), the cover letter and copies of the motions were docketed on the PACER page for the appeal. On April 18, two days after the United States filed its reply/response in this case, the service-of-summons affidavits were docketed in *Mann v. Agnello*, No. 07-CV-12857 (E.D. Mich.).

On April 17, Mann filed a motion with the district court titled "Motion for Ruling Regarding Defendants' Submission to Jurisdiction of Court, which argues that the defendant or defendants on

whose behalf the *ex parte* communication to the district judge was made submitted, by virtue of that communication, to the jurisdiction of that court. (By declaration of the Court of Appeals in its March 20, 2008, order, the case *was* pending on April 10 or April 11, the day on which the *ex parte* communication was made.) Mann had copies of her recent district court motions, along with a cover letter, delivered to the Court of Appeals, and on April 21 the letter and enclosures were docketed in that appeal.

On April 30, Mann filed a motion pursuant to Fed. R. Civ. P. 59(e) to vacate the judgment that issued by operation of law on April 27.   That motion states the defendants were properly served with summonses on April 8 and 9 and that in any event at least one of the defendants submitted to the jurisdiction of the court on April 10 or April 11 via the *ex parte* communication seeking and obtaining the April 11 order purporting to quash the service of the summonses. Mann sent a copy of it along with a cover letter to the Court of Appeals, but it has not been docketed.

So it is the United States rather than Mann whose assertions to this court are erroneous and out-of-date.  Rather than providing the court with copies of her referenced filings in that case, Mann notes that they are readily available on the PACER systems for the Eastern District of Michigan and the Court of Appeals for the Sixth Circuit.

That said, it probably is best, given the above, that this matter not be transferred to that court for consolidation with that case.  Mann asks instead that the case be transferred to the Eastern District of Michigan or to some other federal district court outside the Seventh Circuit and treated as a separate case.

The subject of this matter—Mann's right to obtain the testimony of these subpoenaed witnesses—is an issue of Fourteenth Amendment due process of law, and Mann could and, if necessary will, bring a lawsuit in her home district, the Eastern District of Michigan, to litigate the matter.  In any event, whatever issues exist concerning proper venue, the Fifth Amendment due

10

process and the First Amendment petition clauses trump them. See, e.g., *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004).

Mann no longer wishes to have this matter returned to the Illinois Supreme Court, in light of a bizarre occurrence addressed in detail in an accompanying motion titled "Motion for Declaratory Judgments, the first three paragraphs which read:

> Beverly Mann, *pro se*, moves pursuant to 28 U.S.C. § 2201 for a declaratory judgment that under 28 U.S.C. §§ 1446(d) and 1447(c), once this matter was removed from the Illinois Supreme Court to this court, the Illinois Supreme Court lost jurisdiction to issue any orders in the matter in any respect, and will continue to lack jurisdiction to issue any orders in this matter in any respect unless and until this court remands all or part of the matter back to the Illinois Supreme Court.

> Mann also moves for a declaratory judgment that an order issued in this matter by the Illinois Supreme Court on April 16, 2008, nearly one month after the case was removed from that court to this one, is void *ad ab initio* pursuant to 28 U.S.C. §§ 1446(d) and 1447(c). That order purports to grant a motion filed in that court on behalf of Anne M. Burke, who is now a member of that court, shortly before this case was removed to this court on March 20, 2008, asking that the subpoena—one of the subpoenas at issue in this matter—served upon Burke be quashed. The order stated nothing more than that the motion was granted; it discussed neither the substantive basis for it nor the issue of whether or not that court had jurisdiction to issue it. Burke did not recuse herself from the matter. In her petition to that court, which initiated the matter that is currently before this court, Mann moved for recusal of Burke and also for recusal of the six other justices.

> Mann also moves for a declaratory judgment that Burke's participation in issuing the order that purported to grant her own motion to quash the subpoena served upon her constituted a violation of Mann's Fourteenth Amendment right to due process of law.

Mann incorporates by reference and relies here upon the contents of that motion and its exhibits. This matter cannot be handled by the Illinois Supreme Court, as the continued assignment of the matter to that court would violate Mann's Fourteenth Amendment right to due process of law.

## III.

There are five additional claims that the United States makes at the behest of Easterbrook in its Reply/Response that raise separate questions regarding the ethics of the contents of that filing.

One is the reassertion without elaboration that *Edwards v. Department of Justice*, 43 F.3d 312 (7th Cir. 1994), is an opinion that pertains to the judicial branch. This although, as Mann detailed in her response [Doc. # 9] to the motion to dismiss, *Edwards* concerns, and *could* concern, only Administrate Procedure Act, ("APA"), 5 U.S.C. §§ 701-706, which covers only Executive Branch administrative agencies. The reply/response does not contest this. Instead, it simply re-invokes *Edwards*, without elaboration.

Second, it asserts, also without elaboration (albeit implicitly) that district court opinions are binding upon other district courts. They are not, and these litigants well know that.

Third, they flatly ignore the unequivocal fact noted in Mann's response to the motion to dismiss that the proposed amended Code of Conduct for United States Judges expressly states that federal judges are obligated to comply with subpoenas in judicial misconduct or attorney misconduct matters, presumably whether or not those matters are in federal court or in state; most attorney misconduct matters are, after all, litigated in state-court proceedings. They also ignore that, as Mann noted in her response to the motion to dismiss, the *current* Code of Conduct for United States Judges expressly states that federal judges are obligated to comply with certain types of subpoenas. Yet these litigants continue to claim, without an iota of law to support it, that state courts lack jurisdiction to compel compliance with subpoenas served upon federal employees.

As for why Mann stated, without bothering to cite authority, that the doctrine of sovereign immunity applies only to claims for damages, the body of Supreme Court authority that makes this clear, usually in the context of 42 U.S.C. § 1983 injunction actions but in other types of matters as well, is so lengthy and so clear that it did not occur to Mann that these litigants would claim otherwise. See, e.g., *Halbert v. Michigan*, 545 U.S. 605; 125 S. Ct. 2582; 162 L. Ed. 2d 552 (2005). (Nor does Eleventh Amendment sovereign immunity bar all claims against states even for monetary damages. See *United States v. Georgia; Goodman v Georgia*, 546 U.S. 151; 126 S. Ct.

877; 163 L. Ed. 2d 650 (2006); *Tennessee v. Lane*, 541 U.S. 509, 543, n. 4, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004).)

Fourth, these subpoenaed witnesses continue, without explanation, to claim that they are being subpoenas in their official capacity. The judges, at least, are not.

Fifth, and relatedly, they also continue to claim, without explanation, that they are entitled to initiate a misconduct complaint against someone and then refuse to honor subpoenas served upon them by the person against whom they initiated the complaint—a clearly deliberate attempt to violate that person's fundamental right to due process.

Respectfully submitted,


s/Beverly Mann
Beverly Mann
*Pro se*
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895
beverlymann2@yahoo.com

DATED: May 12, 2008

13