*MHW*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

F I L E D
6 - 2 - 2 0 0 8
JUN 0 2 2008  YM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

In the Matter of BEVERLY B. MANN
Attorney-Respondent

In the matter of a Petition for a Rule to
Show Cause against:

GINO AGNELLO, Clerk, United States Court
of Appeals for the Seventh Circuit, FRANK
H. EASTERBROOK, Chief Judge, and
Circuit Judges MICHAEL S. KANNE,
DANIEL A. MANION, KENNETH F.
RIPPLE, ILANA D. ROVNER, DIANE P.
WOOD, and ANN C. WILLIAMS.

No. 08 C 1627
Judge St. Eve
Magistrate Judge Cole

Formerly case No. M.R. 22285
(06 CH 38), Supreme Court of Illinois

### MOTION PURSUANT TO FED. R. CIV. P. 59(e) FOR RECONSIDERATION OF MAY 25, 2008 ORDER; MOTION FOR RECUSAL OF DISTRICT JUDGE AMY J. ST. EVE

Beverly Mann, *pro se*, moves pursuant to Fed. R. Civ. P. 59(e) for reconsideration of the order

entered by this court on May 25, 2008 which denied Mann's motions to disqualify all District and

Magistrate Judges within the Seventh Circuit (Doc. 7), Mann's motion for remand under 28 U.S.C.

§ 1447(c) for lack of jurisdiction (Doc. 8), Mann's motion for declaratory judgments (R. 11-1), and

which granted on the merits the respondents' motion to dismiss (Doc. 3).[1]  Mann also alleges below,

at Section II, that the district judge, Amy J. St. Eve, engaged in actual misconduct—not merely the

appearance of it, but actual impropriety—in her handling of this matter, and Mann moves, as a

---

[1] Because Mann is barred permanently by the Court of Appeals for the Seventh Circuit from filing an appeal in this or any matter, and is in fact barred permanently from filing "any papers" at all in any federal court within the Seventh Circuit, she is forwarding a copy of this motion to the chair of the Judicial Conference of the United States' Committee on Intercircuit Assignments, along with a cover letter stating that she has been barred from appealing from this court's orders, and asking that that Committee arrange for the reassignment of this matter to a judge outside the Seventh Circuit. (Mann also notes that she is free to collaterally challenge the order here in the Eastern District of Michigan, her home district, because, by none other than the Seventh Circuit's own precedent, any order that for whatever reason is non-appealable has no *res judicata* effect because it does not meet the full-and-fair-opportunity-to-litigate criteria for due process. See, e.g., *McKnight v. General Motors Corp.*, 908 F.2d, 104 (7th Cir. 1990). See also *Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545 (1990). Nor in this case would it meet equal protection criteria either.)

separate motion based upon the specifics of that allegation, that Judge St. Eve disqualify herself from deciding this Rule 59(e) motion.

In support, Mann incorporates by reference and relies here in part upon the contents of her Motion for Disqualification of All District and Magistrate Judges Within the Seventh Circuit (Doc. 7); her Motion for Remand Pursuant to 28 U.S.C. § 1447(a) and (c) (R. 3-1); her Response to Motion to Dismiss (Doc. 8); her Reply in Support of Motion for Remand Pursuant to 28 U.S.C. § 1447(a) and (c) (Doc. 12); and her Motion for Declaratory Judgments (Doc. 11); and further states the following:

## I.   Disqualification of Seventh Circuit district-court bench pursuant to 28 U.S.C. § 455 – conflict of interest

Under 28 U.S.C. § 455, the threshold issue to be determined in this matter—a prerequisite even to determination of federal-court subject-matter jurisdiction—was Mann's Motion for Disqualification of All District and Magistrate Judges Within the Seventh Circuit ((R. 7-1), an issue that (revealingly, in light of the nature of her *actual* conflict of interest) this district judge decided to address in total in a three-sentence footnote. The footnote, n. 1 at p. 3, which contains no analysis but does include a patently falsely representation that Mann moved for recusal because she has filed lawsuits against this district judge and other federal district judges, dismayingly reads:

> Petitioner has moved for recusal under 28 U.S.C. §455 of all district court judges and magistrate judges in the Seventh Circuit because "the work of each district and magistrate judge within the Seventh Circuit is regularly reviewed on appeal by [Respondents]". (R. 7-1, Pet'r's Motion.) Petitioner's showing is insufficient insofar as it relates to the Court. *See, e.g., In re Taylor*, 417 F.3d 649, 652-53 (7th Cir. 2005) (denying mandamus where a petitioner had previously sued presiding judge in civil litigation: "[t]here is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties").

Mann has sued exactly one federal district judge—Southern District of Illinois Judge G. Patrick Murphy, in the United States District Court for the Eastern District of Michigan, in connection with the matter that underlies this one—and she makes no claim at all that this disqualifies either the

2

current district judge or the entire district court bench within the Seventh Circuit. Nor does Mann claim, directly or inferentially, that this district judge or any other has a personal grudge against her, either because she has sued any of them or for any other reason. Her claim is that this district judge and all other district judges within the Seventh Circuit have a personal (or professional) *interest*— i.e., a *conflict of interest*—in continuing to preside in this matter.

Surely this district judge understands the difference between judicial bias *against* a party—that is, a personal reason for ruling *against* a particular party—and a judge's personal *interest* in ruling *for* a particular party irrespective of the identity of the opposing litigant. And surely she knows that 28 U.S.C. § 455 requires disqualification in *either* circumstance. (Judges are, for example, required to disqualify themselves if they hold stock in a corporation that is a party to the lawsuit, irrespective of whether or not the judge has an independent bias against the corporation's opposing party.)

But if she does not, she might consider reading, e.g., *Liteky v. United States*, 510 U.S. 540, 548 (1994). That is what United States District Judge Norman K. Moon (Northern District of Virginia, Western Division) did last week in *Rosenfield v. The Honorable William W. Wilkins, acting in his official capacity as Chief Judge of the United States Court of Appeals for the Fourth Circuit*, No. 3:05-CV-00072 (Feb. 13, 2006). Mann learned of *Rosenfield* on May 30, 2008, when she read an article online at published in the June 2, 2008 edition of the *National Law Journal*. See "Bid to Sue 4th Circuit's Former Chief Judge Over Fees Falters," Pamela A. MacLean, *National Law Journal*, Jun. 2, 2008, at http://www.law.com/jsp/law/LawArticleFriendly.jsp?id=1202421830974.   The article reads:

> A Virginia capital defense lawyer had no recourse in 2006 for the 4th U.S. Circuit Court of Appeals' unexplained cut in his bill from $38,000 to $10,000 for work on a death penalty appeal to the circuit, the Supreme Court and a clemency petition.
>
> So Steven Rosenfield sued the man who signs off on the payments, 4th Circuit's former Chief Judge William Wilkins, claiming that the cut, without a chance to know why and challenge it, violated his due process rights.

On Wednesday, Rosenfield lost when the 4th Circuit issued an unpublished decision on the action of its own former chief judge. It held that national standards imposed in 2006 by the Judicial Conference of the United States, the judiciary's policy-setting arm, established national review standards that answered Rosenfield's criticism. Each circuit was ordered to comply by revising local standards to give notice and explanation of fee reductions in Criminal Justice Act-appointed cases, and allow for challenges.

But for Rosenfield it was too late. The circuit panel held his claim was now moot and did not apply retroactively to his case, *Rosenfield v. Wilkins*, 06-2182.

"The [circuit] court would not have changed the rules. There is no question it was a result of the lawsuit," said Vic Glasberg, of Glasberg & Associates, a civil rights attorney in Alexandria, Va., who represented Rosenfield.

In general civil rights fee claims, "when judges rule on fee applications they cite chapter and verse. It is not new to state the grounds for a decision," Glasberg said. That was not required in capital case billing, prior to the rule change, he said.

Notably, the Court of Appeals' unpublished opinion, *Rosenfield v. Wilkins*, 2008 U.S. App. LEXIS 11329 (4th Cir. May 28, 2008), states that "District Court Judge Norman K. Moon, initially assigned to this case, recused himself sua sponte, noting the appearance of impropriety that might be present in his rendering a decision in a case involving Judge Wilkins, who regularly hears appeals from the district court judges in the Fourth Circuit." The opinion then says that ultimately, Chief Judge James B. Loken, of United States Court of Appeals for the Eighth Circuit, accepted an intercircuit designation and assignment to act as a district court judge in this matter.

A copy of Judge Moon's Feb. 13, 2006 *sua sponte* recusal order accompanies here as Exhibit 1, and Mann incorporates its contents. As Judge Moon notes, *Liteky* interprets 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," as "cover[ing] both 'interest and relationship' and 'bias and prejudice grounds []—requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice [against a party or in favor of a party] but its appearance." [Internal citations omitted.] [Italics in *Liteky* itself.] Citing *United States v. DeTemple*, 163 F.3d 279 (4th Cir. 1998), Judge Moon expounded

4

that, given the wording of the statute, disqualification is necessary when a judge's impartiality might be questioned by a reasonable, well-informed observer aware of "all the facts and circumstances." *DeTemple* at 286. "This hypothetical observer is presumed to be "outside the judicial system" and may not be as aware as judicial personnel of a judge's constitutional and ethical obligations to decide matters solely on the merits. *Id.* at 287. However, the observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased.' *Id.*"

Judge Moon's opinion is not merely supporting authority; Judge Moon offers himself as a hypothetical observer—albeit one who is inside the judicial system and who is aware of a judge's constitutional and ethical obligations to decide matters solely on the merits—not just in *Rosenfield* but also in this case.

In this case, the district judge's proffered single-sentence justification for her conclusion in her May 21 order that "Petitioner's showing is insufficient insofar as it relates to the Court"— specifically that "[t]here is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties"—is, however, either a bald misrepresentation of fact, as discussed above, or a *non sequitur*.

Why, pray tell, would the non-existence of a rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties be relevant *at all* to the sufficiency of Mann's claim that the fact that the work of each district and magistrate judge within the Seventh Circuit is regularly reviewed on appeal by the Respondents?

The district judge is, however, spot-on in stating in her footnote that Mann requests the disqualification of all district judges within the Seventh Circuit "because 'the work of each district and magistrate judge within the Seventh Circuit is regularly reviewed on appeal by [Respondents]'. (R. 7-1, Pet'r's Motion.)" That, in fact—i.e., that the work of each district and magistrate judge within the pertinent federal circuit (in that instance, the Fourth Circuit) is regularly reviewed on

5

appeal by the court on which the defendant is its former chief judge and on which he remains an active member—was *precisely* the reason Judge Moon cited for his *sua sponte* recusal under 28 U.S.C. § 455 in *Rosenfield*. Judge Moon stated:

> Although Judge Moon firmly believes he could try this matter without bias, he also believes recusal is necessary because there is a nontrivial risk that an outside observer might doubt his impartiality. That observer would be aware that [Respondent] Judge Wilkins hears appeals from Judge Moon's decisions. *The observer might perceive that Judge Moon's own personal and professional interests would be served by ruling in Judge Wilkins' favor, and question Judge Moon's ability to ignore those interests when deciding this case.* [Italics added.]

In *Rosenfield*, Judge Wilkins was acting in his official capacity as chief judge of the Court of Appeals for the Fourth Circuit, but, more important, he was acting in a purely ministerial capacity. Once the particular order was issued by the district judge, Judge Wilkins, as chief judge, was required by statute to sign it, without exercising any discretion in the matter. He was sued expressly and solely in his official capacity under *Ex Parte Young*, 209 U.S. 123 (1908), just as prison wardens are sued under 28 U.S.C. §§ 2254 and 2255 or prison wardens and a variety of other government officials are sued under, say, 42 U.S.C. § 1981, *et seq*. A state governor or a federal cabinet official will be named in his or her official capacity in a lawsuit challenging, for example, the constitutionality of a statute or government policy.

This clearly is a far different circumstance than a lawsuit in which the government employee or official is sued solely in his individual capacity or in his individual and official a capacities; lawsuits that sue government employees or officials in their individual as well as their official capacities, or that sue the official solely in his or her official capacity, allege *volitional* misconduct *by that employee or official*, apart from what the law requires or permits that person to do in his official capacity; indeed, such lawsuits allege that the employee or official exceeded or countermanded his lawful authority, rather than acting in accordance with a law that itself is unconstitutional. The district judge in this case conflates the two concepts—just as she conflates subject-matter jurisdiction and affirmative defenses—and asserts that a government employee or

6

official cannot be sued in his individual capacity for actions that relate to his government job. But they can, and regularly are.

As for the district judge's claim that these respondents are entitled to sovereign immunity because they are being sued in their official capacity, she apparently is astonishingly ignorant or sovereign-immunity jurisprudence, which bars only lawsuits for monetary damages. See, e.g., *Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Hamden v. Rumsfeld*, 548 U.S. 557 (2006). And then, of course, there is the issue of whether the United States and these particular respondents, by their act of filing the complaint in the matter in which these respondents were subpoenaed, waived any sovereign immunity available to them.

And while in this case, these defendants are not being sued *at all*—they are being *subpoenaed* to testify in a matter begun not by Mann but instead by at least one of them—the matter at issue, and the testimony that they are being subpoenaed to give, concerns them directly, personally and profoundly. They are being asked to testify concerning allegations, based upon significant circumstantial evidence, that some of them engaged in conduct that is unquestionably unethical and, regarding three of these respondents, probably violative of federal criminal law.

Two of the federal-judge respondents—Easterbrook and Rovner—also are being subpoenaed to testify regarding whether they deliberately and improperly interfered in the outcome of an appeal in Illinois *state* court. One of them, Easterbrook, is being subpoenaed to testify regarding allegations that he improperly removed an appeal from the normal random assignment to a three-judge panel; that he held the file in his chambers for 18 months after completion of the briefing in the appeal until a loosely-related state-court appeal was decided; that he and Rovner secretly arranged for the transfer of the state-court appeal from the panel to which it was assigned and had it assigned to a panel that included Rovner's longtime close friend; that Easterbrook participated in the drafting of the state-court opinion and then relied upon verifiably incorrect procedural facts stated in the state-

7

court opinion in issuing the unpublished opinion and a series of subsequent orders in the federal appeal; that he alone issued that opinion and the subsequent orders and falsified the names of two other judges on those orders although neither judge was even aware of the appeal; and that he later alone issued orders on which he falsified the names of other judges who were unaware of the matter and played no role in the decision to issue the orders.

The judges whose names Mann alleges were falsified on those orders are among the subpoenaed respondents, and they are subpoenaed precisely to testify that in fact their names were falsified on those orders and that the orders were issued without their participation or knowledge. Does the district judge believe that the allegations against Easterbrook are part and parcel of the job of federal judge acting in his official capacity and that the subpoenaed testimony—including that some of these judges' names were falsified on a series of crucial court orders—concerns actions protected by a supposed judicial privilege?

Mann doubts it, but whether or not this district judge actually believes her assertion—or for that matter, any much less all of her other assertions—the issues here implicate clear personal and professional interests of these respondents. For the precisely the reason that Mann stated in her motion for disqualification and that Judge Moon recognized in *Rosenfield*, 28 U.S.C. § 455 prohibits this district judge and all other district judges within the Seventh Circuit from hearing this case. And in this case, unlike in *Rosenfield*—where the defendant judge's integrity was not in question and which posed no conceivable risk to him of reputational harm, much less of serious professional or even legal jeopardy, as *is* the situation here—it is not a question of mere perception of impartiality but instead also of actual impartiality.

And so it is not just 28 U.S.C. § 455 but also the Fifth Amendment's due process guarantee, which in part underlies that statute, that requires the disqualification of those judges. There are strong indications in this district judge's order that she *in fact* was unwilling to put aside her

8

personal interest, and that she ruled as the effective subordinate of some of these respondents considered herself compelled in her own interest to rule—both in denying the motion for disqualification and in adopting wholesale and without analysis these respondents' every argument, without acknowledging much less refuting Mann's substantive fact-based and law-based refutations of those arguments.

## II.   Disqualification of Judge St. Eve pursuant to 28 U.S.C. § 455 – misconduct

As noted above, Judge St. Eve cited as her sole ground for denying Mann's motion for disqualification the sentence in *In re Taylor*, 417 F.3d 649 (7th Cir. 2005) at 652-53 that reads, "There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties."

As discussed above, the judge apparently is conflating the issue of the need under 28 U.S.C. § 455 for disqualification of the Seventh Circuit district court bench, as the clearly-stated basis for the motion for disqualification, with the separate issue of the need for disqualification under 28 U.S.C. § 455 of the Seventh Circuit *appellate* judges if the case reached that court—the latter which presents entirely different grounds and issues than the former. But the judge's decision to claim that Mann grounded her disqualification motion in nothing more than that she was or is involved in litigation with one of the parties is downright bizarre. It is not other litigation but *this* litigation that she is involved in with these respondents. This judge, rather than address the fact that it is her own and her district-court colleagues' conflict of interest that is at issue here, she piggy-backs on the *appellate* judges' conflict of interest and claims that their interest is nothing more than that they are or were involved in *other*, unrelated litigation with Mann.

In fact, *Taylor* itself requires at a minimum a detailed examination of the *actual* interest of the judge or judges—according to this district judge, the conflated interests of the appellate judges and

of the Seventh Circuit appellate and district benches—and, almost certainly, recusal of *both*

benches. The Analysis section of that opinion reads in full:

> Taylor's petition for writ of mandamus focuses primarily on the first case in which Judge
> Reinhard was included as a defendant, case no. 97 C 50233, because Taylor alleged
> wrongdoing specifically against Judge Reinhard in that case. There is no rule that requires a
> judge to recuse himself from a case, civil or criminal, simply because he was or is involved in
> litigation with one of the parties. *See Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d
> 1363, 1375 (7th Cir. 1994) (en banc); *United States v. Watson*, 1 F.3d 733, 735 (8th Cir. 1993);
> *United States v. Grismore*, 6 No. 05-2357 654 F.2d 929, 933 (10th Cir. 1977). One reason for
> this policy is that a per se rule of disqualification would allow litigants to judge shop by filing a
> suit against the presiding judge. *See generally In re Nettles* ,394 F.3d 1001, 1003 (7th Cir.
> 2005). And even if litigation against a judge is not for the purpose of disqualification, recusal is
> not automatic because suits against public officials are common and a judge would likely not
> harbor bias against someone simply because the person named him in a meritless civil suit.
> *Lyons v. Sheetz*, 834 F.2d 493, 495, n.1 (5th Cir. 1987); *United States v. Balistrieri*, 779 F.2d
> 1191, 1202 (7th Cir. 1985). In deciding whether recusal is necessary, a court also should
> consider the time that has passed; courts have held that personal bias arising from past litigation
> will likely erode over time. *See Balistrieri*, 779 F.2d at 1200 (ten-year lapse between event that
> allegedly caused bias and recusal motion weighed against finding of bias); *see also Tezak v.
> United States*, 256 F.3d 702, 717 (7th Cir. 2001) (eight-year lapse weighs against finding of
> bias).
>
> All of the above cited cases that discuss lawsuits against judges address actual bias, rather than
> appearance of bias under 28 U.S.C. § 455(a). The same factors discussed in determining actual
> bias should be considered in determining appearance of bias, however, because the reasonable
> observer contemplated in § 455(a) is a well-informed, thoughtful observer. *See Hook v.
> McDade*, 89 F.3d 350, 354 (7th Cir. 1996). And courts have addressed similar factors—the
> purpose and merit of an action—in determining whether other actions against judges,
> specifically threats of harm, create an appearance of bias requiring disqualification under §
> 455(a). *See Nettles*, 394 F.3d at 1002-03 (disqualification required because defendant's threat
> was genuine even though judge was never in any actual danger); *United States v. Yousef*, 327
> F.3d 56, 170 (2d Cir. 2003) (threat against judge made for purpose of harassment does not
> require disqualification); *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994)
> ("Had there been any reason to believe that threats were made only in an attempt to obtain a
> different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose,
> recusal would not have been warranted.").
>
> At first glance, Taylor's prior litigation against Judge Reinhard seems to be a proper ground for
> recusal under 28 U.S.C. § 455(a). The civil litigation had concluded before Taylor was charged
> in this case and was clearly not filed for the purpose of the later recusal. And the prior litigation
> accused Judge Reinhard of conspiring with state officials in the alleged cover-up of illegal
> activity—allegations that if true would not be covered by judicial immunity.
>
> But a well-informed observer, one who knew the details of the prior litigation, would not
> believe that the civil cases required recusal. First, the claims against Judge Reinhard were
> frivolous. Taylor alleged no facts that show a connection between Judge Reinhard and any of

the other defendants that would support Taylor's conspiracy claims. Taylor alleged only that Judge Reinhard and the state judges were "friends in the robe"—apparently an allegation that judges form an improper alliance based only on their position. The claims against Judge Reinhard are one small part of a frivolous litigation pattern. Taylor, who apparently was not mentally stable when he filed these suits, may have sincerely believed that all local, state, and federal officials with whom he had contact were in a conspiracy against him. But this belief does not make his claims meritorious. *See Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002).

Additionally, although Taylor's inclusion of Judge Reinhard in the civil cases was not for the purpose of recusal in the subsequent criminal case, it does appear to have been for the purpose of having Taylor's civil litigation heard by another judge. The only factual allegation that Taylor attributes to Judge Reinhard is the judge's dismissal of his earlier cases, and the relief Taylor seeks is to have his prior cases reinstated and heard by another judge. Lastly, eight years have passed since the conclusion of Taylor's cases against Judge Reinhard. Even if Judge Reinhard was personally biased against Taylor in 1997, it is unlikely that a reasonable observer would think that his judgment was still clouded today. *See Balistrieri*, 779 F.2d at 1200.

There is not even a single fact that that opinion identifies as relevant that resembles a fact in this case, which presumably is why this district judge stated falsely that Mann based her motion upon—and solely upon—was or is involved in litigation with some of the respondents. Given that it is this very litigation in which Mann is involved with those respondents, the district judge is claiming preposterously that those respondents could *themselves* rule on an appeal in this case, without so much as a detailed statement of the nature of the case and the issues and of the nature of their own interest in the outcomes of the matter. The district judge is, in other words, doing a favor for her superiors by denying the motion for disqualification and by then ruling in their favor on the merits—the latter result being, in this case, a highly questionable outcome (see discussion below) had the matter been submitted for inter-circuit assignment. And because the outcome probably would be different had the case been reassigned, this district judge is doing herself a favor—a big one—by acting as she has.

Notable in the district judge's order is the curious absence of citation to, much less discussion of, *Liteky*, which is the Supreme Court's definitive opinion on 28 U.S.C. § 455. Also absent from the order is citation to any Supreme Court opinion that even arguably would support a denial of the

11

motion for disqualification.  That absence is not because this discussion would not fit in the footnote.  It is because no such opinion exists.

Nor does the district judge invoke the rule of necessity, which in any event would not apply.  In his disqualification order in *Rosenfield, supra*, District Judge Moon discussed at length the applicability of the rule of necessity to the disqualification of an entire district bench, stating:

> Because the apparent conflict described above appears to all Fourth District district judges, the question arises whether Judge Moon should hear the case under the "rule of necessity."  The rule of necessity provides that a judge may not recuse himself if doing so would result in denial of a litigant's right to have his claim adjudicated, and it "is generally invoked in cases in cases in which no judge in the country is capable of hearing the case." *Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000); see generally *United States v. Will*, 449 U.S. 200 (1980).  In what may be described as a caveat or conditional extension of the rule, three courts of appeals have also invoked it "where a plaintiff indiscriminately sues all of the judges in a circuit," holding that the fact that it is possible to convene a panel of disinterested judges outside the circuit does not require transfer of the case or preclude the application of the rule of necessity." *Bolin*, 225 F.3d at 1238 (citing *Switzer v. Berry*, 198 F.3d 1255 (10th Cir. 2000); *Topia-Ortiz v. Winter, et al*, 185 F.3d 8 (2nd Cir, 1999).

> The court finds that this is not an appropriate case to invoke the rule of necessity.  A reasonable observer would not question the impartiality of all Article III judges in this case, because the "interest and relationship" concerns expressed above are confined within the Fourth Circuit.  Additionally, plaintiffs have not indiscriminately sued all Article III judges in the Fourth Circuit or otherwise targeted Judge Wilkins with the bad-faith purpose of causing Fourth Circuit-wide disqualification.  Rather, Chief Judge Wilkins is likely the sole individual whose administrative duties and authority would enable him to implement the relief Plaintiffs seek, and thus the only sensible defendant to name.

In a footnote, Judge Moon writes that "[a] ready mechanism exits for inter-circuit transfers.  The Judicial Conference of the United States has a Committee on Intercircuit Assignments committed to assisting Chief Judges in assigning and designating Article III judges for service outside their circuits."  Given that Easterbrook is the current chief judge of this circuit, he will *need* assistance in assigning and designating an Article III judge for service in this case, outside his or her circuit.  Assistance in the form of compelled recusal from participating in the reassignment and designation of such a judge in this matter.

There are other red flags as well in the district judge's order: her generic adoption, regarding the merits, of even the most transparently frivolous claims, without explanation or even the pretense of analysis, and especially her failure even to acknowledge that Mann had contested those claims with specific fact and law and to attempt to refute any of Mann's assertions of fact and law.

Does the district judge really believe, for example, as the respondents and now the district judge claim, that the Administrate Procedure Act ("APA"), 5 U.S.C. §§ 701-706, applies to the *judicial branch* and that it authorizes the *Judicial Conference* of the United States to promulgate "a regulation governing testimony of federal judiciary personnel and production of judiciary records in legal proceedings," and that the "Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings, found at www.uscourts.gov/courts/regulations. htm#regulations", has the same legal effect as, say, the Federal Bureau of Investigation's regulations at issue in *Edwards v. Department of Justice*,43 F.3d 312 (7th Cir. 1994), or regulations promulgated pursuant to the APA by the Environmental Protection Agency, or the Federal Drug Administration, or the Federal Aviation Administration, or the Federal Consumer Product Safety Commission?

Does the district judge also really believe, as the respondents and now she claim, that federal district-court memorandum orders are binding on the other judges within the same federal district?

Does she also actually believe, as the respondents and now she claim, that state courts lack state courts lack jurisdiction to enforce subpoenas served upon federal employees because federal employees may be entitled to invoke a "privilege"—a matter that is entirely unrelated to subject-matter jurisdiction and, like other affirmative defenses, can be waived or forfeited?

Does she really believe that the Judicial Conference of the United States—the same body whose promulgation of regulations concerning testimony by judges and other court personnel these respondents and now the district judge invoke and equate with the APA, 5 U.S.C. §§ 701-706— would include in its Canons of Conduct for United States Judges two provisions that require judges

13

to comply with subpoenas in certain types of matters, including the very type of matter at issue here, if the Judicial Conference believed that by statute, Supreme Court precedent or constitutional dictate, the subpoenas are extra-jurisdictional and thus void or that the doctrine of sovereign immunity applies?

If so, upon what authority, or by what logic, does she believe these claims? She does not say, and none exists. This is a judge who recognizes her significant personal and professional interest in not ruling against these particular respondents—how could she *not* recognize it?— even regarding the motion for disqualification and certainly regarding the merits, and who has acted to serve that personal and professional interest.[2]

Mann empathizes with the district judge, who clearly is placed in a highly uncomfortable position in this case: serving, in effect, as appellate judge in a matter in which the appellate judges who otherwise conduct appellate review of her own rulings. She drew the short straw. But this judge, notwithstanding her constitutional and ethical obligations to decide matters solely on the merits, as Judge Moon phrased it, opted to serve her superiors' and thus her own interests.

## III.    The Merits

Mann further alleges error in fact and law concerning the issue of (a) whether or not the state court has jurisdiction to enforce subpoenas against federal employees and officials in a matter in which those employees and officials possess knowledge relevant to the matter, especially when it is not the plaintiff but instead those respondents who filed the matter—irrespective of whether or not these people are subpoenaed to testify about facts occurring only in their official capacity or instead are subpoenaed to testify in their individual capacity; (b) whether or not the issue of privilege is even conceivably a subject-matter jurisdiction issue or is instead simply an affirmative defense; (c)

---

[2] (In case the district judge needed reminding, she likely received it, at least tacitly, during the Seventh Circuit Judicial Conference's annual meeting on May 18-20, the three days that immediately preceded the issuance of her three-page order.)

whether or not these respondents in fact are subpoenaed in their official capacity or are instead subpoenaed in their individual capacities to testify as occurrence witnesses; (d) whether or not the APA, 5 U.S.C. §§ 701-706, and thus *Edwards, supra,* does apply to the judicial branch; (e) whether or not a federal district-court opinion is binding on the other district judges within the district; and (f) the other substantive issues mentioned above.  Mann discusses them in depth in her earlier filings, which she has incorporated here by reference, and she relies upon those arguments, as well as upon the clear fact of this district judge's conflict of interest in ruling in this case at all.

## IV.    Mootness of the motion for declaratory relief

The district judge's unexplained ruling that Mann's motion for declaratory judgment regarding the effect under 28 U.S.C. §§ 1446 and 1447 of the Illinois Supreme Court's order, issued after the removal of this matter to this court, concerning respondent Anne M. Burke, who is not a federal employee, is jaw-dropping for its brazen cravenness. The Illinois Supreme Court order claimed that that court had been fully advised in the premises, but in fact Mann, relying as she was entitled to do, upon 28 U.S.C. §§ 1446 and 1447, did not file a response to the motion upon which the Illinois Supreme Court purported to rule; the motion was filed only two or three days before the matter was removed to this court.   The order clearly is void for lack of jurisdiction under federal statute to issue it.  Mann's motion is hardly moot, and this judge's claim that it is is downright bizarre—or would be, were the actual reason for its issuance not so starkly apparent.

Respectfully submitted,


s/Beverly Mann
Beverly Mann
*Pro se*
P.O. Box 20
Whitmore Lake, MI 48189
(248) 767-4895
beverlymann2@yahoo.com

### Certificate of Service

I certify that on June 2, 2008, I will file the foregoing with the Clerk of Court, and that on that date I will send notification via fax or email or U.S. mail to the following:

Thomas P. Walsh
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
thomas.walsh2@usdoj.gov

Clerk, Attorney Registration and
Disciplinary Commission of the
Illinois Supreme Court
130 East Randolph Drive, 11th Floor
Chicago, Illinois 60601

Robert V. Verrando
Senior Counsel, Illinois ARDC
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601

Ronald Rascia
Assistant Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601

s/ Beverly Mann
Beverly Mann
P.O. Box 20
Whitmore Lake, MI 48189
Ph: (248) 767-4895
beverlymann2@yahoo.com

**EXHIBIT 1**

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
FEB 1 3 2006

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

STEVEN ROSENFIELD,

and

EDWARD M. WAYLAND

                                    Plaintiffs,

v.

THE HONORABLE WILLIAM W. WILKINS,
*acting in his official capacity as Chief Judge
of the United States Court of Appeals for the
Fourth Circuit,*

                                    Defendant.

CIVIL ACTION No. 3:05-CV-00072

OPINION & ORDER

JUDGE NORMAN K. MOON

This matter is before the Court on its motion. For the reasons stated below, Judge

Norman K. Moon will recuse himself from this matter.

## I. BACKGROUND

Plaintiff Steven Rosenfield is an attorney licensed to practice in Virginia who was

appointed under the Criminal Justice Act ("CJA"), 18 U.S.C. §3006A and 21 U.S.C. §848(q), to

represent an indigent death row state inmate in his petition for clemency to the Governor of

Virginia. Plaintiff Edward Wayland was Rosenfield's law partner and also worked on the

petition. At the end of his representation, Plaintiff submitted a voucher seeking fees totaling

$35,456.25. Defendant, the Honorable William W. Wilkins, acting in his official capacity as

Chief Judge of the United States Court of Appeals for the Fourth Circuit, approved payment of

$10,000.00.

Plaintiffs brought this class action suit on behalf of themselves and all CJA-appointed

attorneys who have had or will have their fees reduced by the Fourth Circuit. They allege that the expectation of compensation for time reasonably expended representing clients is a protected property interest, and that the Fourth Circuit's fee approval process—which they allege lacks any standards and provides for no right of review or appeal—violates class members' procedural Due Process rights under the Fifth Amendment. Plaintiffs named Chief Judge Wilkins as Defendant because he is the chief administrator of the Fourth Circuit and makes final decisions regarding payment of fees and expenses under the CJA. *See* 18 U.S.C.A. § 3006A(d)(3).

This action was filed in the Western District of Virginia, Charlottesville Division, and assigned to the Honorable Norman K. Moon, District Court Judge.

## II. DISCUSSION

### A. A reasonable observer might question Judge Moon's impartiality

Disqualification of judges of the United States is governed by 28 U.S.C. § 455. Subsection (a) provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This "'catchall' recusal provision . . . cover[s] both 'interest and relationship' and 'bias or prejudice grounds[]—requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (internal citations omitted) (emphasis in original). Thus, recusal is necessary when a judge's impartiality might be questioned by a reasonable, well-informed observer aware of "'all the facts and circumstances.'" *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998). This hypothetical reasonable observer is presumed to be "outside the judicial system" and may not be as aware as judicial personnel of a judge's constitutional and

2

ethical obligations to decide matters solely on the merits. *Id.* at 287. However, the observer "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *Id.*

Although Judge Moon firmly believes he could try this matter without bias, he also believes recusal is necessary because there is a nontrivial risk that an outside observer might doubt his impartiality. That observer would be aware that Judge Wilkins hears appeals from Judge Moon's decisions. The observer might perceive that Judge Moon's own personal and professional interests would be served by ruling in Judge Wilkins' favor, and question Judge Moon's ability to ignore these interests when deciding this case.

## B. The rule of necessity does not dictate that Judge Moon hear this case

Because the apparent conflict described above appears to extend to all Fourth Circuit district court judges, the question arises whether Judge Moon should hear the case under the "rule of necessity."

The rule of necessity provides that a judge may not recuse himself if doing so would result in denial of a litigant's right to have his claim adjudicated, and it "is generally invoked in cases in which no judge in the country is capable of hearing the case." *Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000); *see generally United States v. Will*, 449 U.S. 200 (1980). In what may be described as a caveat or conditional extension of the rule, three courts of appeals have also invoked it "where a plaintiff indiscriminately sues all of the judges in a circuit," holding that "the fact that it is possible to convene a panel of disinterested judges outside the circuit does not require transfer of the case or preclude the application of the rule of necessity."[1] *Bolin*, 225 F.3d

---

[1] A ready mechanism exists for inter-circuit case transfers. The Judicial Conference of the United States has a designated Committee on Intercircuit Assignments committed to assisting Chief Judges in assigning and designating Article III judges for service outside their circuits.

at 1238 (citing *Switzer v. Berry*, 198 F.3d 1255 (10th Cir. 2000); *Tapia-Ortiz v. Winter et al.*, 185 F.3d 8 (2d Cir. 1999)).

The Court finds that this is not an appropriate case to invoke the rule of necessity. A reasonable observer would not question the impartiality of all Article III judges in this case, because the "interest and relationship" concerns expressed above are confined within the Fourth Circuit. Additionally, Plaintiffs have not indiscriminately sued all Article III judges in the Fourth Circuit or otherwise targeted Chief Judge Wilkins with the bad faith purpose of causing Fourth Circuit-wide disqualification. Rather, Chief Judge Wilkins is likely the sole individual whose administrative duties and authority would enable him to implement the relief Plaintiffs seek, and was thus the only sensible defendant to name.

### III. CONCLUSION

Because a reasonable observer might question his impartiality, and finding the rule of necessity inapplicable under the circumstances, Judge Norman K. Moon hereby RECUSES himself from this case pursuant to 28 U.S.C. § 455(a).

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Opinion and Order to all counsel of record, as well as the Executive of the Fourth Circuit, Samuel W. Phillips, Circuit Executive; 1100 East Main Street, Suite 617; Richmond, Virginia 23219.

ENTERED: _Norman K Moon_
U.S. District Judge

_Feb. 13, 2006_
Date

4

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
*for Charlottesville*
FEB 13 2006
JOHN F. CORCORAN, CLERK
BY: *Fay Coleman*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

STEVEN ROSENFIELD,

and

EDWARD M. WAYLAND

*Plaintiffs,*

v.

THE HONORABLE WILLIAM W. WILKINS,
*acting in his official capacity as Chief Judge
of the United States Court of Appeals for the
Fourth Circuit,*

*Defendant.*

CIVIL ACTION NO. 3:05-CV-00072

<u>OPINION & ORDER</u>

JUDGE NORMAN K. MOON

This matter is before the Court on its motion. For the reasons stated below, Judge
Norman K. Moon will recuse himself from this matter.

## I. BACKGROUND

Plaintiff Steven Rosenfield is an attorney licensed to practice in Virginia who was
appointed under the Criminal Justice Act ("CJA"), 18 U.S.C. §3006A and 21 U.S.C. §848(q), to
represent an indigent death row state inmate in his petition for clemency to the Governor of
Virginia. Plaintiff Edward Wayland was Rosenfield's law partner and also worked on the
petition. At the end of his representation, Plaintiff submitted a voucher seeking fees totaling
$35,456.25. Defendant, the Honorable William W. Wilkins, acting in his official capacity as
Chief Judge of the United States Court of Appeals for the Fourth Circuit, approved payment of
$10,000.00.

Plaintiffs brought this class action suit on behalf of themselves and all CJA-appointed

attorneys who have had or will have their fees reduced by the Fourth Circuit. They allege that the expectation of compensation for time reasonably expended representing clients is a protected property interest, and that the Fourth Circuit's fee approval process—which they allege lacks any standards and provides for no right of review or appeal—violates class members' procedural Due Process rights under the Fifth Amendment. Plaintiffs named Chief Judge Wilkins as Defendant because he is the chief administrator of the Fourth Circuit and makes final decisions regarding payment of fees and expenses under the CJA. *See* 18 U.S.C.A. § 3006A(d)(3).

This action was filed in the Western District of Virginia, Charlottesville Division, and assigned to the Honorable Norman K. Moon, District Court Judge.

## II. DISCUSSION

### A. A reasonable observer might question Judge Moon's impartiality

Disqualification of judges of the United States is governed by 28 U.S.C. § 455. Subsection (a) provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This "'catchall' recusal provision . . . cover[s] both 'interest and relationship' and 'bias or prejudice grounds[]—requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (internal citations omitted) (emphasis in original). Thus, recusal is necessary when a judge's impartiality might be questioned by a reasonable, well-informed observer aware of "'all the facts and circumstances.'" *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998). This hypothetical reasonable observer is presumed to be "outside the judicial system" and may not be as aware as judicial personnel of a judge's constitutional and

2

ethical obligations to decide matters solely on the merits. *Id.* at 287. However, the observer "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *Id.*

Although Judge Moon firmly believes he could try this matter without bias, he also believes recusal is necessary because there is a nontrivial risk that an outside observer might doubt his impartiality. That observer would be aware that Judge Wilkins hears appeals from Judge Moon's decisions. The observer might perceive that Judge Moon's own personal and professional interests would be served by ruling in Judge Wilkins' favor, and question Judge Moon's ability to ignore these interests when deciding this case.

## B. The rule of necessity does not dictate that Judge Moon hear this case

Because the apparent conflict described above appears to extend to all Fourth Circuit district court judges, the question arises whether Judge Moon should hear the case under the "rule of necessity."

The rule of necessity provides that a judge may not recuse himself if doing so would result in denial of a litigant's right to have his claim adjudicated, and it "is generally invoked in cases in which no judge in the country is capable of hearing the case." *Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000); *see generally United States v. Will*, 449 U.S. 200 (1980). In what may be described as a caveat or conditional extension of the rule, three courts of appeals have also invoked it "where a plaintiff indiscriminately sues all of the judges in a circuit," holding that "the fact that it is possible to convene a panel of disinterested judges outside the circuit does not require transfer of the case or preclude the application of the rule of necessity."[1] *Bolin*, 225 F.3d

---

[1] A ready mechanism exists for inter-circuit case transfers. The Judicial Conference of the United States has a designated Committee on Intercircuit Assignments committed to assisting Chief Judges in assigning and designating Article III judges for service outside their circuits.

3

at 1238 (citing *Switzer v. Berry*, 198 F.3d 1255 (10th Cir. 2000); *Tapia-Ortiz v. Winter et al.*, 185 F.3d 8 (2d Cir. 1999)).

The Court finds that this is not an appropriate case to invoke the rule of necessity. A reasonable observer would not question the impartiality of all Article III judges in this case, because the "interest and relationship" concerns expressed above are confined within the Fourth Circuit. Additionally, Plaintiffs have not indiscriminately sued all Article III judges in the Fourth Circuit or otherwise targeted Chief Judge Wilkins with the bad faith purpose of causing Fourth Circuit-wide disqualification. Rather, Chief Judge Wilkins is likely the sole individual whose administrative duties and authority would enable him to implement the relief Plaintiffs seek, and was thus the only sensible defendant to name.

### III. CONCLUSION

Because a reasonable observer might question his impartiality, and finding the rule of necessity inapplicable under the circumstances, Judge Norman K. Moon hereby RECUSES himself from this case pursuant to 28 U.S.C. § 455(a).

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Opinion and Order to all counsel of record, as well as the Executive of the Fourth Circuit, Samuel W. Phillips, Circuit Executive; 1100 East Main Street, Suite 617; Richmond, Virginia 23219.

ENTERED: ___Norman K. Moon___
U.S. District Judge

___Feb. 13, 2006___
Date

4